578 F.2d 685
 Mabel VICKERS, Therese Fox, and Mildred Borkstrom,
Individually and on behalf of all others similarly
situated, Plaintiffs-Appellees,
v.
Arthur F. QUERN, Director, Illinois Department of Public
Aid, Defendant-Appellant.
 No. 77-1639.
 United States Court of Appeals,
Seventh Circuit.
 Argued Jan. 13, 1978.
Decided June 29, 1978.
 
 Ellen P. Brewin, Special Asst. Atty. Gen., William A. Wenzel, Chicago, Ill., for defendant-appellant.
 Anne Rapkin (Student), Frank S. Bloch, Mandel Legal Aid Clinic, Chicago, Ill., for plaintiffs-appellees.
 Before CUMMINGS and PELL, Circuit Judges, and EAST, Senior District Judge.*
 PELL, Circuit Judge.
 
 
 1
 This is an appeal from a district court order granting plaintiffs' motion for summary judgment and denying that of defendant. The plaintiffs[1] initially filed their complaint on December 8, 1975 challenging regulations of the Illinois Department of Public Aid (IDPA) which restricted provision of chore and housekeeping services[2] to recipients of Aid to Families with Dependent Children (AFDC), Supplemental Security Income (SSI), and the Illinois State Supplement Program for the Aged, Blind, and Disabled (SSP).
 
 
 2
 The complaint alleged five distinct causes of action. The first charged that IDPA had violated 45 C.F.R. § 228.34(d)[3] by giving no explanation of the restriction of chore and housekeeping services to AFDC, SSI, or SSP recipients and by giving no indication that any public comment was received relative to the change in eligibility standards. The second cause of action charged that IDPA's exclusion of persons such as the named plaintiffs who needed housekeeper services but had insufficient funds to pay for them violated Title XX of the Social Security Act by reason of its failure to distribute the social services in a manner which was both equitable and consistent with the objective of providing a given service to the maximum number of persons in the State who were in need thereof. The third cause of action charged that the IDPA regulations, excluding from consideration any needs for housekeeper services in determining financial eligibility for AFDC and SSP, violated the requirements of Title XX. The fourth cause of action charged that the IDPA regulations concerning eligibility for AFDC and SSP restricted eligibility for those programs and for chore and housekeeping services contrary to the Illinois Public Aid Code, specifically Ill.Rev.Stat. ch. 23, § 12-4.11.[4] The fifth, and last, cause of action charged that the denial to persons who have the same or greater need for chore and housekeeping services as AFDC, SSI, or SSP recipients and who similarly are without funds necessary to pay for the services but whose income came from a source other than AFDC, SSI, or SSP deprived the plaintiffs and the class they represented of the equal protection of the law as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution.
 
 
 3
 In a Memorandum Opinion and Order of March 22, 1976, the district court denied defendant's motion to dismiss, ruling that the plaintiffs had stated a sufficient constitutional claim for purposes of establishing jurisdiction. The district court stated that the equal protection claim was not devoid of any merit, implausible, or foreclosed by prior Supreme Court decisions. See Hagans v. Lavine, 415 U.S. 528, 536-39, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974). It also denied plaintiff's motion for preliminary injunctive relief and for class certification.
 
 
 4
 Following briefing on cross-motions for summary judgment and the filing of stipulated facts and exhibits, the district court, in a Memorandum Opinion and Order entered June 24, 1976, abstained on its own motion from deciding the merits of the case, stayed the federal action, and directed the parties to bring proceedings in state court concerning the state law claim set out in their fourth cause of action. After the district court's denial of plaintiffs' motion for reconsideration, plaintiffs appealed. On December 10, 1976, this court held that the district court incorrectly denied class certification, and improperly abstained in view of the delay, expense, and potentially irreparable injury to plaintiffs and of the inadequacy of the state proceedings. Vickers v. Trainor, 546 F.2d 739 (7th Cir. 1976) (Vickers I ) The case was remanded with instructions to consider initially the state law and statutory claims.
 
 
 5
 On remand, the district court decided the state law claim (count 4) in favor of the plaintiffs as well as the first statutory claim (count 1).[5] It declined to decide counts 2 and 3 because the favorable decision on the state law claim provided the relief plaintiffs requested. It also did not reach count 5, the equal protection claim, because it observed the sound principle of federal adjudication that constitutional questions are to be reached last.[6] The defendant appeals on the grounds that the district court abused its discretion in assuming jurisdiction over the pendent state law claim and that it erroneously construed the state statute in deciding the state law claim.
 
 
 6
 Under the doctrine of pendent jurisdiction, a federal court, in a case alleging both a federal claim of sufficient substance to confer subject matter jurisdiction and state claims, may assume pendent jurisdiction over the state claims whenever the state and federal claims "derive from a common nucleus of operative fact" and are such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). In Gibbs, the Court carefully distinguished between constitutional power to assume pendent jurisdiction and discretionary exercise of that power.
 
 
 7
 That power need not be exercised in every case in which it is found to exist. It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right.
 
 
 8
 Id. at 726, 86 S.Ct. at 1139 (footnote omitted). It is this discretion that defendant alleges was abused by the district court.[7]
 
 
 9
 The defendant, extrapolating somewhat inaccurately from the language of Gibbs, argues that a court abuses its discretion to exercise pendent jurisdiction if: (1) concerns of comity and federalism militate against such exercise; (2) the federal claims should have been dismissed prior to trial; and (3) the state claims predominate over the federal claims.
 
 
 10
 As to the concerns of comity and federalism, the defendant offers no authority to support its argument that such concerns require a court with jurisdiction over federal statutory claims, a federal constitutional claim, and a state claim, to decide the federal statutory claims before the state claim. Moreover, the defendant concedes the novelty of this argument. This court thoroughly considered and addressed the problems of comity and federalism in Vickers I, and although the consideration was primarily directed to the propriety of the district court's abstention, much of the analysis is apposite to our determination in the present appeal that the district court did not abuse its discretion by deciding the state law claim first.[8]
 
 
 11
 As to the dismissal of federal claims prior to trial, Gibbs stated that if the federal claims are dismissed before trial, the state claims should be dismissed as well.[9] Id. at 726, 86 S.Ct. 1130. In the present case, the federal issues were not dismissed prior to trial. Moreover, defendant argues that only the federal statutory claims should have been dismissed leaving the state claim and the equal protection claim. From this posture, defendant concludes that the district court abused its discretion by not dismissing the state claim. Even assuming arguendo that the federal statutory claims should have been dismissed, defendant's conclusion lacks any support in either judicial precedent or jurisprudential reasoning; indeed, it contravenes the well-established judicial principle that federal constitutional claims should be adjudicated last. We, therefore, are unable to find an abuse of discretion even assuming arguendo defendant's premise that the federal statutory claims should have been dismissed.
 
 
 12
 In further support of its argument that the district court abused its discretion in exercising jurisdiction over the state law claim, the defendant asserts that the state law claim predominated over the federal claims. The defendant's argument, however, focuses on the relative importance of the federal statutory claims vis-a-vis the state law claim and completely ignores the existence of the equal protection claim. This omission is critical, because even if the state law claim predominates over the federal statutory claims, we are still left with a federal constitutional claim sufficient to confer jurisdiction and a pendent state law claim. Because the equal protection claim thoroughly pervades the issues in this case in that it addresses the validity of the eligibility scheme, the state law claim does not predominate over it. Of course, the merits of the equal protection claim need not be reached to determine the predominance issue, and we intimate no view as to the merits of that issue.
 
 
 13
 The overriding factors a court should consider in determining whether to exercise its discretion to assume jurisdiction over pendent state claims are judicial economy, convenience, and fairness to the litigants. Gibbs, supra 383 U.S. at 726, 86 S.Ct. 1130. In view of these factors, we find nothing in the district court proceedings or in the defendant's arguments to indicate that the district court's assumption of jurisdiction over the pendent state law claim and its adjudication of that claim prior to the federal claims constituted an abuse of discretion.
 
 
 14
 The defendant's second major argument in this appeal is that the district court erroneously construed Ill.Rev.Stat. ch. 23, § 12-4.11.[10] The statute provides the power of the IDPA to create standards regarding the administration of public assistance programs and the determination of need therefor. It was construed by the district court to require the IDPA to consider the need for chore and housekeeping services when determining eligibility for assistance under the Public Aid Code. Although we note a troubling lack of clarity in the Illinois Public Aid Code, we are of the opinion that the district court correctly construed it.
 
 
 15
 The defendant challenges the district court's construction on several grounds. First, it argues that this construction obfuscates the distinction between "financial assistance" and "social services." That such a distinction exists is undisputed, but its existence does not offend the construction of the district court which merely requires that the need for certain social services be considered when determining eligibility for public aid.
 
 
 16
 Second, the defendant argues that the district court's construction rendered superfluous the definitional section of the Code, Article II. The defendant's argument, although only briefly stated, appears to be directed to the ambiguity in the first two sentences of § 12-4.11 created by the use of the term "public aid" in the first sentence and the term "financial aid" in the second sentence. The first sentence gives the IDPA broad power to establish standards by which need for "public aid" (which includes, under the definition in Article II, both financial aid and social services) will be determined. The second sentence states that the standards set by the IDPA shall provide a livelihood compatible with health and well-being for persons eligible for "financial aid." The third and fourth sentences require that the IDPA consider the need for social services such as those at issue in this appeal. The critical interpretive inquiry is whether the use of "financial aid" in the second sentence qualifies the sentences following it such that a person's need for social services cannot be considered in determining his eligibility for public aid. We are of the opinion that it does not. Although the statute is not crystal clear, we agree with the district court that the construction proposed by the defendant creates a circular inequity inconsistent with the basic goals of the Code. We cannot condone a construction that prohibits consideration of a person's need for social services in determining that person's eligibility for those services.
 
 
 17
 The defendant also argues that the district court's construction contradicts the purpose of the Code as expressed in § 1-1.[11] The defendant offers no explanation for this assertion, and as we read § 1-1, we can only conclude to the contrary. The district court's construction facilitates implementing the public purpose of promoting the welfare of the people and helping them to "develop their self-reliance and realize their capacities for self-care."
 
 
 18
 The district court's construction is further challenged by defendant on the basis that § 3-7 and § 4-5 appear to limit the availability of social services enumerated therein to recipients of "financial assistance." This challenge, however, misses the point in that the district court's construction of § 12-4.11 merely requires that the IDPA take into account a person's need for certain social services in determining eligibility for public aid. It does not, as defendant's argument apparently assumes, require that certain social services be provided to persons not eligible for public aid. See Ill.Rev.Stat. ch. 23, § 9-1.
 
 
 19
 Finally, the defendant argues that the district court's construction undermines the intent of the Illinois General Assembly that the IDPA cooperate with the federal government for the purpose of receiving federal funds. Specifically, defendant argues that because federal welfare laws and regulations consistently distinguish "services" from "financial assistance," the district court's construction, which defendant argues blurs that distinction, abrogates the Illinois General Assembly's intent to cooperate with the federal government. Because we disagree with defendant's premise that the district court's construction blurs the distinction between "services" and "financial assistance," we are unpersuaded by defendant's conclusion. For these reasons, we affirm the judgment of the district court.
 
 
 20
 AFFIRMED.
 
 
 
 *
 Senior Judge William G. East of the District of Oregon is sitting by designation
 
 
 [1]
 The plaintiffs are a class of persons in need of housekeeping services as a result of severe disabilities which make it impossible for them to care for themselves in their own homes. They are not eligible for Aid to Families with Dependent Children, Supplemental Security Income, or Illinois State Supplement Program for the Aged, Blind, and Disabled, because they receive sufficient income from other sources such as Social Security or Veterans benefits to cover ordinary living expenses. Their incomes, however, are insufficient to meet their need for housekeeping assistance. The district court formally certified the class as "all persons in the State of Illinois in need of Title XX chore and housekeeping services, but ineligible therefor solely by virtue of the fact that the need is not taken into consideration when the (Illinois Department of Public Aid) determines eligibility of said persons for the programs of Aid to Families with Dependent Children, State Supplement Program and Supplemental Security Income."
 
 
 [2]
 Chore and housekeeping services are provided by the IDPA as part of programs available under Title XX of the Social Security Act, 42 U.S.C. § 1397, et seq., and include provision of essential household tasks such as shopping, simple household repairs, and other light tasks. The service is intended for persons who would otherwise be unable to remain in their homes
 
 
 [3]
 45 C.F.R. § 228.34(d) states in pertinent part: "The final services plan must include an explanation of differences between the proposed and final services plan and the reasons therefor, including a summary of the public comments."
 
 
 [4]
 This statutory section appears in the article of the Public Aid Code entitled "Administration," and it sets forth the powers and duties of IDPA regarding the standards of the assistance, their content, and limitations, and provides in pertinent part:
 Establish standards by which need for public aid will be determined and amend such standards from time to time as circumstances may require.
 The standards shall provide a livelihood compatible with health and well-being for persons eligible for financial aid under any Article of this Code. They shall include recognition of any special needs, such as assistance in shopping, guide service, or similar special requirements occasioned by the handicaps and infirmities of age, blindness, or disability. To permit the maintenance at home of ill or disabled persons who would otherwise require removal to a nursing, sheltered care, or boarding facility, the standards shall include provision for home-delivered meals, home nursing care, and housekeeping assistance to the extent that the cost of such home services together with other maintenance expenses of the person is reasonably related to standards established for care in a group facility appropriate to the person's condition.
 Ill.Rev.Stat. ch. 23, § 12-4.11 (1975).
 
 
 [5]
 The decision on count 1 is not addressed here because subsequent to the district court decision the services plan, which count 1 challenged for lack of explanation, was superceded by a new plan. Although the new plan and regulations are identical in substance to their predecessors, the legality of their publication is not at issue in this appeal
 
 
 [6]
 See, e. g., Hagans v. Lavine, 415 U.S. 528, 546-47, 94 S.Ct. 1374, 39 L.Ed.2d 577 (1974); Hillsborough v. Cromwell, 326 U.S. 620, 629, 66 S.Ct. 445, 90 L.Ed. 358 (1946); Cincinnati v. Vester, 281 U.S. 439, 448-49, 50 S.Ct. 360, 74 L.Ed. 628; Louisville & Nashville R. Co. v. Garrett, 231 U.S. 298, 303-04, 310, 34 S.Ct. 48, 58 L.Ed. 229 (1913); Siler v. Louisville & Nashville R. Co., 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909)
 
 
 [7]
 The defendant does not challenge the court's jurisdictional power to hear the pendent state claim. It concedes that the federal equal protection claim was not wholly insubstantial and was thus sufficient to confer jurisdiction. See Hagans v. Lavine, 415 U.S. 528, 536-37, 94 S.Ct. 1374, 39 L.Ed.2d 577 (1974)
 
 
 [8]
 We might add that even had the district court followed defendant's novel proposition and addressed the federal statutory claims before the state law claim, and had the district court decided the federal statutory claims in favor of defendant as defendant argued it would have, the court would have been left with the federal constitutional claim and the state law claim, and would have, as it did, disposed of the case on the basis of the state law claim. In essence, even under defendant's proposed order of deciding the claims, the result would have been identical unless the court would have abandoned the well-settled principle of deciding constitutional claims last. See note 6 supra
 
 
 [9]
 This doctrine has not been rigidly followed since Gibbs. See, e. g., Brunswick v. Regent, 463 F.2d 1205 (5th Cir. 1972); Springfield Television, Inc. v. City of Springfield, Mo., 462 F.2d 21 (8th Cir. 1972). However, we do not intimate our views as to the proper breadth or application of the doctrine
 
 
 [10]
 For pertinent text of § 12-4.11 see note 4 supra
 
 
 [11]
 Section 1-1 of the Code provides:
 Public Purpose Aims in Providing
 The purpose of this Code is to assist in the alleviation and prevention of poverty and thereby to protect and promote the health and welfare of all the people of this State.
 To accomplish this purpose, this Code authorizes financial aid and social welfare services for persons in need thereof by reason of unemployment, illness, or other cause depriving them of the means of a livelihood compatible with health and well being, and provides for the development, use and coordination of all resources in this State, governmental and private.
 The Illinois Department of Public Aid shall establish such standards of financial aid and services as will encourage and assist applicants and recipients to maintain a livelihood compatible with health and well being and to develop their self-reliance and realize their capacities for self-care, self-support, and responsible citizenship.
 The maintenance and strengthening of the family unit shall be a principal consideration in the administration of this Code. All public aid policies shall be formulated and administered to achieve this end.
 Ill.Rev.Stat. ch. 23, § 1-1 (1975).