Hiroshi and Daisy KANDA, Clyde and Susan Kanda, by their mother and next friend, Daisy Kanda, Josephine Jung, and Robert and Carrie Sills, on behalf of themselves and others similarly situated, Plaintiffs,

v.

Andrew CHANG, in his capacity as Director, Department of Social Services & Housing, State of Hawaii, and Edwin Tam, in his capacity as Administrator, Public Welfare Division, Department of Social Services & Housing, State of Hawaii, Defendants.

Civ. No. 77–0258.

United States District Court, D. Hawaii.

July 18, 1979.

Calleen J. Ching, Karen M. Radius, Stanley E. Levin, Legal Aid Society of Hawaii, Honolulu, Hawaii, for plaintiffs.

Charleen M. Aina, Gerald Yoshida, James P. Dandar, Michael Lilly, Deputy Attys. Gen., Ronald Amemiya, Atty. Gen., State of Hawaii, Honolulu, Hawaii, for defendants.

## DECISION ON MOTIONS FOR SUMMARY JUDGMENT

SAMUEL P. KING, Chief Judge.

Defendants' motion for summary judgment and plaintiffs' cross-motion for summary judgment require the court to pass upon the validity of the policies contained in Hawaii Public Welfare Manual (HPWM) § 3392, as interpreted and applied by the State Department of Social Services and Housing (DSSH), for evaluating the equity that applicants and recipients of Aid to Families With Dependent Children (AFDC) may have in their home property while receiving assistance.[1]

Plaintiffs contend that the State's definition of equity (1) is underinclusive in that it does not allow for deductions from market value of obligations other than secured mortgage loans obtained to purchase or repair the home property or for deduction of costs of sale such as broker's fees, closing costs, and escrow fees, (2) is illogical in that it does not allow for evaluating life-interests differently from fee simple interests, and (3) is restrictive in that it does not allow for an independent appraisal of market value. Each of these deficiencies, they say, violates the requirement of 45 C.F.R. § 233.20(a)(3)(ii)(E) that "resources will be reasonably evaluated."

Plaintiffs also contend that the State considers home property as a reserved resource even though the property is not currently available to meet current and future needs, unless the property is tied up by legal conditions or unclear title and then for only one year. This, they say, violates the requirement of 45 C.F.R. § 233.20(a)(3)(ii)(D)

1. This case started as a complaint for declaratory and injunctive relief filed July 19, 1977, by Mr. and Mrs. Kanda and their two minor children against the Director of the State Department of Social Services and Housing, and the Administrator of the Public Welfare Division of that Department, requiring these officials to recognize plaintiffs' eligibility for AFDC assistance. The Kandas moved for a preliminary injunction. After a hearing held on July 29, 1977, the court denied the motion for a preliminary injunction. The order so doing was filed on November 25, 1977.

On the day set for the hearing of the preliminary injunction, Mrs. Tannahill and her two minor children sought to intervene. Their motion to intervene and for a preliminary injunction, with supporting papers, had been filed two days before, on July 27, 1977. Their situation was somewhat different in that interests in real property other than "home property" were involved. This made their case one more properly within the issues raised in *Jarra v. Chang,* Civil No. 77–0053 in this court. An order approving a stipulation for intervention in Civil No. 77–0053 by the Tannahills was filed on August 10, 1977. No further action was taken on their application to intervene in this proceeding, although leave to intervene had been granted.

An amended complaint was filed on August 9, 1977, seeking to turn the original complaint into a Rule 23(b) class suit with six causes of action. On May 17, 1978, the Kandas moved to amend their amended complaint to add additional named plaintiffs and to clarify previously stated claims into eight causes of action. A motion for determination of class was filed at this same time.

The motion for leave to amend complaint was granted at a hearing held on June 16, 1978. (The order allowing the amendment was filed June 26, 1978.) The second amended complaint was duly filed on June 21, 1978. The named plaintiffs in this second amended complaint were Mr. and Mrs. Kanda and their two minor children, Mrs. Jung, and Mr. and Mrs. Sills. They sued "on behalf of themselves and others similarly situated."

On August 10, 1978, a motion was filed for a preliminary injunction on behalf of Zerelda Makekau, alleged to be a class member. This motion was granted at the hearing thereon held on August 21, 1978. (The written order granting preliminary injunction as to Mrs. Makekau was filed on August 22, 1978.) Defendants moved to reconsider this order. The motion to reconsider was denied on September 26, 1978. Defendants filed their motion for summary judgment on September 19, 1978. Plaintiffs filed a cross-motion for summary judgment on September 26, 1978, and an amended cross-motion for summary judgment on September 28, 1978.

that "currently available resources shall be considered." [2]

## CLASS CERTIFICATION AND JURISDICTION

This action was determined to be maintainable as a class action pursuant to Rule 23(a) and (b)(2), Federal Rules of Civil Procedure, and the class was provisionally defined on July 5, 1978.[3] After further consideration, the class was redefined as follows:

> All AFDC applicants and recipients whose assistance has been, is being or will

2. The First Cause of Action complains that H.P.W.M. § 3392 violates 45 C.F.R. § 233.-20(a)(3)(ii)(D) in that the State policy presumes that home property in excess of the equity limits can be liquidated immediately to provide for the plaintiffs' present needs.

The Fifth Cause of Action complains that the situation complained of under the First Cause of Action creates an irrebuttable presumption in contravention of the Due Process Clause of the United States Constitution.

The Second Cause of Action complains that H.P.W.M. § 3392 violates 45 C.F.R. § 233.-20(a)(3)(ii)(D) and (E) in that the State policy in evaluating equity in home property gives no consideration to costs of sale or to encumbrances other than the first mortgage.

The Sixth Cause of Action complains that the situation complained of under the Second Cause of Action creates an irrebuttable presumption in contravention of the Due Process Clause of the United States Constitution.

The Third Cause of Action complains that H.P. W.M. § 3392 violates 45 C.F.R. § 233.-20(a)(3)(ii)(E) in that the State policy does not reasonably evaluate home property as a resource by using assessments for real property tax purposes as a basis for estimating fair market value.

The Seventh Cause of Action complains that the situation complained of under the Third Cause of Action creates an irrebuttable presumption that fair market value is equal to tax assessment formula value in contravention of the Due Process Clause of the United States Constitution.

The Fourth Cause of Action complains that H.P.W.M. § 3392 violates 45 C.F.R. § 233.-20(a)(3)(ii)(D) in that the State policy presumes that legal conditions imposed or unclear title on home property, which render this home property not currently available, can be removed within one year.

The Eighth Cause of Action complains that the situation complained of under the Fourth Cause of Action creates an irrebuttable presumption that a currently unavailable resource becomes currently available one year after date of application for assistance in contravention of the Due Process Clause of the United States Constitution.

3. In the first and second amended complaints the class is defined as "all AFDC applicants and recipients who have been, are being and will be found ineligible for assistance under H.P.W.M. § 3392 because the Defendants have improperly evaluated their home property and classified it as a resource actually and currently available to them."

A motion for determination of class was filed on May 17, 1978, at the same time as a motion to file a second amended complaint. An order determining class was entered on July 5, 1978, defining the class as "all AFDC applicants and recipients whose assistance has been, is being or will be denied or terminated, pursuant to H.P.W.M. § 3392, because they allegedly own property with an equity in excess of $40,000." The possibility of subclasses was provided for, and a form of notice to be sent by defendants to class members was attached.

At a hearing on August 21, 1978, on a motion for a preliminary injunction on behalf of Zerelda Makekau, an alleged class member, the court was of the opinion that the class should be redefined to reflect more precisely that plaintiffs and those similarly situated challenge the validity of the method set forth in H.P. W.M. § 3392 for evaluating currently available equity in home property but do not challenge the authority of the State to set a maximum dollar limit on this equity as a condition of eligibility. Accordingly, an amended order redefining the class, with an amended form of notice attached, was entered on September 21, 1978.

Upon further consideration, I am of the opinion that, if this action were to proceed as a class action, the class should be further redefined to remove the implication that H.P.W.M. § 3392 necessarily results in an unreasonable evaluation of equity in home property. The class as redefined would be:

> All AFDC applicants and recipients whose assistance has been, is being, or will be, denied or terminated because the DSSH determines pursuant to H.P.W.M. § 3392 that the assistance household is retaining as a currently available reserved resource home property in which the members of the assistance household own a combined equity in excess of $40,000.

be denied or terminated, pursuant to H.P. W.M. § 3392, because the regulation unreasonably evaluates their equity in their home property.

■ However, in light of *Chapman v. Houston Welfare Rights Organization* and *Gonzalez v. Young*, —— U.S. ——, 99 S.Ct. 1905, 60 L.Ed.2d 508 (1979), and *Snyder v. Harris*, 394 U.S. 332, 89 S.Ct. 1053, 22 L.Ed.2d 319 (1969), and *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), I am now of the opinion that this action cannot be maintained as a class action.

Plaintiffs allege jurisdiction under 28 U.S.C. § 1343(3) and (4) and 28 U.S.C. § 1331. *Chapman* and *Gonzalez* hold specifically that § 1343 does not confer federal jurisdiction over claims based on the Social Security Act, since that Act is not a statute securing "equal rights" within the meaning of § 1343(3) or "civil rights" within the meaning of § 1343(4).

Plaintiffs argue that *Chapman* and *Gonzalez* are not controlling here because plaintiffs allege denial of rights secured by the Constitution. I am unpersuaded. Counts V, VI, VII, and VIII of the Second Amended Complaint restate the alleged statutory violations of Counts I, II, III, and IV, as irrebuttable presumptions violative of the Fourteenth Amendment.[4] While the concept is ingenious, I do not believe that the proposed legal principle survives analysis. The challenged provisions and procedures of H.P.W.M. § 3392 are simply not irrebuttable presumptions, and even if they were, the nexus to the Fourteenth Amendment is farfetched. Cases such as *Hagans v. Lavine*, 415 U.S. 528, 94 S.Ct. 1372, 39 L.Ed.2d 577 (1974),[5] cited by plaintiffs, involve an element of discriminatory treatment. No equal protection claim is made in this case.

Plaintiffs may proceed under 28 U.S.C. § 1331(a) if their claims exceed $10,000, exclusive of interest and costs. In this situation, *Snyder* teaches that individual claims may not be aggregated to obtain the jurisdictional amount, and *Zahn* teaches that one plaintiff may not ride in on another's coattails.

Following the teaching of *Potrero Hill Community Action Committee v. Housing Authority*, 410 F.2d 974 (9th Cir. 1969), and *City of Inglewood v. City of Los Angeles*, 451 F.2d 948 (9th Cir. 1971), the better practice under the circumstances is to deny the prayer for class certification and to proceed on the merits as to those individual plaintiffs who can meet the $10,000 jurisdictional requirement.

## LEGAL CONTEXT

Title IV of the Social Security Act provides for Aid to Families With Dependent Children. 42 U.S.C. §§ 601–610. Federal monies are made available for making payments to States which have approved plans for aid and services to needy families with children. 42 U.S.C. § 601. Among other things, the State plan must provide, with certain exceptions not relevant here, "that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child or relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid, as well as any expenses reasonably attributable to the earning of any such income." 42 U.S.C. § 602(a)(7). Secretaries of responsible federal departments are authorized to make and publish rules and regulations, not inconsistent with the Social Security Act, as may be necessary to the efficient administration of the functions with which each is charged. 42 U.S.C. § 1302.

The Secretary of Health, Education and Welfare has promulgated regulations regarding the requirements for State plans

---

4. *See* note 2 *supra.*

5. *See Vickers v. Quern*, 578 F.2d 685 (7th Cir. 1978); *Greklek v. Toia*, 565 F.2d 1259 (2d Cir. 1977); *Williams v. Wohlgenmuth*, 540 F.2d 163 (3d Cir. 1976); *Armstrong v. Candon*, 451 F.Supp. 1148 (D.Vermont 1978); *Manfredi v. Maher*, 435 F.Supp. 1106 (D.Conn.1977).

for the several types of assistance provided under the Social Security Act, including AFDC. With respect to need and amount of assistance, these requirements are set forth at 45 C.F.R. § 233.20.[6]

The State plan must "[s]pecify the amount and type of real and personal property, including liquid assets, that may be reserved, i. e., retained to meet the current and future needs while assistance is received on a continuing basis." 45 C.F.R. § 233.20(3)(i). This subsection continues: "In addition to the home, personal effects, automobile and income producing property allowed by the agency, the amount of real and personal property, including liquid assets, that can be reserved for each individual recipient shall not be in excess of two thousand dollars. Policies may allow reasonable proportions of income from businesses or farms to be used to increase capital assets, so that income may be increased."

Furthermore, in determining need and the amount of assistance, the State plan must provide that "net income available for current use and currently available resources shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance," 45 C.F.R. § 233.20(3)(ii)(D), and must provide that "income and resources will be reasonably evaluated," 45 C.F.R. § 233.20(3)(ii)(E).[7]

Under these regulations, each State may adopt its own policies, not inconsistent with federal statutes and regulations, with respect to the home property as a retained resource while assistance is being received.[8]

Hawaii's policies in this regard are set forth in H.P.W.M. § 3392 which reads as follows:

## POLICY

3392 *Real Property*

1. *Consideration as a Resource*

   a. All real property owned by an applicant or by a recipient and by family members in the assistance household is considered as resource except for:

   1) Home property lived on by the assistance household if equity is $40,000 or less.

   a) Home property includes fee simple and lease land.

   b) An applicant or recipient whose home property has been determined to have equity of $40,000 or less and who has signed the property agreement form shall be eligible for assistance, provided he meets all other eligibility requirements.

   2) Other property if equity is $500 or less.

   3) Burial plots for family use.

   b. The equity, which is the value of the property beyond the amount owed on it, is arrived at by determining the market value minus the outstanding mortgage.

   Estimated market value can be determined from the most recent Notice of Property Assessment from the Department of Taxation (Form P-2 . . .) in the following manner:

   $$\frac{\text{Tax assessed value}}{\text{Percent of fair market value used by tax assessor for real property tax purposes.}}$$

2. *Legal Status*

   is actually available for current use on a regular basis will be considered, and only currently available resources will be considered; . . . and (e) income and resources will be reasonably evaluated. 45 C.F.R. § 233.20(a)(3)(ii) (1972).

---

6. 45 C.F.R. § 233.20 (1977) is worded somewhat differently from 45 C.F.R. § 233.20 (1972). Specific differences in the wording of 45 C.F.R. § 233.20(a)(3)(ii) are noted in note 7 *infra*.

7. Parallel provisions in the 1972 regulations read:

   (ii) . . . in establishing financial eligibility and the amount of the assistance payment: . . . (c) only such net income as

8. *National Welfare Rights Organization v. Mathews*, 174 U.S.App.D.C. 410, 417–18, 533 F.2d 637, 644–45 (1976).

a. Real property tied up by legal conditions or unclear title is not considered a resource until it [sic] has been removed. The applicant or recipient shall be given 30 days following date of application to initiate legal action by contacting an attorney to clear title and may be given up to one year from date of application to remove the condition or clear the title.

b. Action taken following contact with the attorney shall be reviewed by the sixth month following date of approval to determine that every reasonable effort has been made to take the necessary steps to clear the title. Such steps to be taken by the recipient include the following:

1) Gathering information for the attorney.

2) Title search when the applicant/recipient has not been able to obtain the information.

3) File action with the courts.

4) Serve all parties involved, and following 20 days request hearing date; service through publication when whereabouts of a party is unknown.

5) Request hearing date.
   When no action has been taken, the applicant/recipient shall be ineligible for further assistance.

c. Time to complete action to clear legal status on real property shall be allowable only once on the same property.

3. *Agreement*

a. The applicant or the recipient must agree to notify and secure the Department's permission before conducting any transaction including property not considered as resource. This includes selling or subdividing. A homeowner who assigns or transfers property without financial benefits equivalent to the amount that can be obtained in the open market declares himself and those dependent on him ineligible.

b. The agreement must be signed at the time equity is determined and decision made not to consider such real property as a resource.

4. *Mortgage Payments—Homeownership Cost*

a. Homeowners whose equity in the home property is less than $40,000 and who otherwise qualify for assistance, shall have mortgage payment recognized as shelter cost requirement for the homeowner or renter.

b. All provisions relating to shelter cost applicable to families renting private dwelling shall apply to the homeowner.

There has been some confusion and some change of position and practice in the interpretation and application of these policies. The State agrees that in determining equity it gives no consideration to obligations which are not encumbrances on the home property, whether these are unsecured loans, costs of sale, or any other type of obligation.[9] The record is not entirely clear, however, as to whether the State also gives no consideration to some types of encumbrances. Plaintiffs allege that the State considers only mortgage loans obtained for the purpose of purchasing or repairing the home property. Apparently some DSSH personnel so interpret and apply the State policies,[10] but also apparently on ap-

9. Defendants' Memorandum in Support of Motion for Summary Judgment at 7: "The State rejects any contention that equity means anything other than FMV [fair market value] less encumbrances. Any other costs attributed to the liquidation of real estate are irrelevant to the reasonable and normal method of computing equity." *But see* note 17 *infra*.

10. Internal Communication Form of Department of Social Services, dated June 9, 1977, regarding Application for Fair Hearing in the matter of Carrie and Robert Sills, attached as part of Exhibit 6 to Defendants' Memorandum in Support of Summary Judgment. Initial review of the application resulted in a determination that Mr. and Mrs. Sills were ineligible for

peal the fair hearing officers have reversed the line personnel and ruled that any type of bona fide encumbrance must be taken into consideration.[11]

The State denies that it does not allow for evaluating life interests differently from fee simple interests.[12] It does contend, however, that where the life interest in home property is held by a member of the "assistance household" and all remainder interests are held by other family members of the same "assistance household," the State has a right to disregard the division of interests among these members. In such situations, the State evaluates the entire home property as a retained resource when determining eligibility.[13]

The State admits that it employs primarily the assessed value for real property tax purposes as a basis for calculating fair market value of home property. It contends that this is a rational, reasonable, and proper method for evaluating this resource.

Here too, the record is not clear as to whether the State refuses to consider an objective appraisal submitted by an applicant.[14] When determining fair market value of other than fee simple interests, an assessed value for real property tax purposes is not always available, which requires some other approach even under H.P. W.M. § 3392(1)(b).[15] Thus, the policy set forth in the manual can be interpreted as only an example of an acceptable appraisal method rather than as an exclusive formula.[16] The State adopts this stance in its Memorandum in Opposition to Plaintiffs' Cross-Motion for Summary Judgment, although in actual practice DSSH personnel may not be aware that they are allowed flexibility in this area.

The plaintiffs' argument that the one-year limitation on clearing up the legal status of real property violates federal requirements is objected to by the State on

assistance based on the following calculation: assessed value of home property of $38,909 divided by 60% gives estimated market value of $64,848.33 less outstanding first mortgage indebtedness in the principal amount of $23,-733.57 equals $41,074.76. A second mortgage indebtedness in the principal amount of $6,394.45 was not deducted. It is not clear from the record whether this second mortgage indebtedness was ignored because the proceeds of the secured loan were supposed to have been for a patio addition whereas upon inspection no patio addition was observed, or just because it was not "the outstanding mortgage."

**11.** Decision dated May 17, 1978, of Fair Hearing Officer Gail F. Karlen, in the matter of the Sills application, attached as part of Exhibit 6 to Defendants' Memorandum in Support of Summary Judgment. Ms. Karlen noted the fact that no patio addition was observed although that was the stated purpose of the second mortgage loan in question, but she ruled that both first and second mortgage indebtedness (rounded off as $29,000 at the time of her decision) should be deducted. This left an equity of $35,848.33, substantially below the $40,000 maximum.

**12.** Defendants' Memorandum in Opposition to Plaintiffs' Cross-Motion for Summary Judgment at 5: "Reference to lack of a difference in valuation methods for life and fee simple estates presumes that H.P.W.M. § 3392 as written does not authorize use of amortization tables to fix the value of life estates. The refer-

ence fails to comprehend that the ownership requirement in H.P.W.M. § 3392 . . . is enough to require the beneficial adjustment of the fair market value factor of the equity formula which the DSSH made in valuing life estates."

**13.** Oral representation of counsel for defendants at conference on June 20, 1979, for clarification of arguments.

**14.** Plaintiff Jung did submit her own appraisal, which was considered by the fair hearing officer. Decision dated May 12, 1978, of Fair Hearing Officer Gail F. Karlen, in the matter of the Jung application, attached as part of Exhibit 4 to Defendant's Memorandum in Support of Summary Judgment.

**15.** H.P.W.M. § 3392(1)(a)(1)(a) states: "Home Property includes fee simple and lease land." Leasehold residential developments are common in Hawaii and the lessee's equity may often be separately assessed for real property tax purposes. Where it is not, appraisal methods in use are available.

**16.** The manual actually sets forth policy provisions on the left side of a page and procedural explanations on the right side of the page. In the procedural column opposite H.P.W.M. § 3392(1)(b) appears the language: "Market value can also be developed by contact with a knowledgeable source such as real estate broker, the tax office."

the ground that the point was not raised in the complaint and is not a matter of law or fact which is common to any class represented by any named plaintiff. The State does not deny that this limitation is State policy as enunciated in H.P.W.M. § 3392(2).

## INDIVIDUAL PLAINTIFFS

Plaintiffs' Second Amended Complaint names as plaintiffs Mr. & Mrs. Kanda and their two minor children, Mrs. Jung, and Mr. & Mrs. Sills. Earlier, the court granted a preliminary injunction to Class Member Zerelda Makekau. In exhibits to their Memorandum in Support of Cross Motion for Summary Judgment and in Opposition to Defendants' Motion for Summary Judgment filed on September 26, 1978, the cases of Bonnie Gaier, Brenda J. Oguma Cowell, and Violet De Souza, are set forth. In a Supplemental Memorandum filed on September 28, 1978, the cases of Frances E. Arakawa, and Mr. & Mrs. Heamasi Mataele, are set forth.

Having decided that this action may not be maintained as a class action, I must now examine the status of each named plaintiff.

and suggested class member to determine whether jurisdiction lies as to each such person pursuant to 28 U.S.C. § 1331, and, if so, whether a cause of action is stated or a justiciable issue remains as to each person who satisfies the jurisdictional requirement.

Brenda J. Oguma Cowell has her own actions pending in both state and federal courts.[17] Under the circumstances, she will not be considered a party to this action.

Violet De Souza's case involves an equity in real property other than "home property." [18] Therefore, she will not be considered a party to this action.

As to the remaining individuals, I find that each meets the requirement that the amount in controversy exceed $10,000, exclusive of interest and costs.[19] However, Bonnie Gaier, Frances E. Arakawa, and Mr. & Mrs. Heamasi Mataele have not filed any pleadings in their own names. Their situations were presented as illustrative of the kinds of problems facing members of the class. If they desire to intervene in this action as named plaintiffs, they may do so by appropriate motion.[20] Therefore, these

17. Mrs. Cowell's application for AFDC assistance was denied by Fair Hearing Officer Gail F. Karlen by decision dated April 24, 1978. On May 24, 1978, she filed a Notice of Appeal, Civil No. 54713 in the Circuit Court of the First Circuit, State of Hawaii, pursuant to Hawaii Revised Statutes Chapter 91. On May 25, 1978, she filed an action, Civil No. 78–0188 in this court. On August 25, 1978, she filed a motion to consolidate her federal action with this action. U. S. Magistrate Thomas P. Young on October 3, 1978, granted the motion to consolidate. Meanwhile, a hearing on the State action had been held on September 28, 1978, which resulted in a decision on October 4, 1978, favorable to Mrs. Cowell. The state court's decision resulted in a remand to the DSSH for further administrative proceedings which have not yet been completed. Defendants in Mrs. Cowell's federal action moved on October 13, 1978, for a review of the magistrate's order of consolidation. On November 2, 1978, Judge Wong granted the motion for review and denied the motion to consolidate. Inasmuch as I do not interpret federal statutes or regulations to require the State to recognize unsecured loans as deductions from fair market value in determining the applicant's or recipient's equity in real property, the State action will be dispositive of Mrs. Cowell's claim.

18. Her situation was described by plaintiffs solely for the purpose of illustrating the State's policy with respect to the one year limit within which to clear up "legal conditions or unclear title" to real property. See note 41 infra.

19. Plaintiffs allege that the "amount in controversy exceeds $10,000." Defendants deny this allegation but have not pursued the issue. I am of the opinion that each plaintiff can meet the test expounded in St. Paul Indemnity Co. v. Cab Co., 303 U.S. 283, at 288–89, 58 S.Ct. 586, at 590, 82 L.Ed. 845 (1937), that:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal.

See Weinberger v. Wiesenfeld, 420 U.S. 636, 95 S.Ct. 1225, 43 L.Ed.2d 514 (1974); Riggins v. Riggins, 415 F.2d 1259 (9th Cir. 1969).

20. This is not to imply that a motion to intervene at this stage of the proceedings would be advisable, or would necessarily be granted.

individuals will not be considered parties to this action at this time.

Zerelda Makekau came forward with pleadings in her own name as a member of the class. She obtained a preliminary injunction relating to her particular situation. She will be considered as if she were a named plaintiff.

I will now examine the factual situations of the named plaintiffs (including Zerelda Makekau) to determine whether there are any justiciable issues left that are ripe for summary judgment.

## FACTUAL SITUATIONS

Plaintiffs Hiroshi and Daisy Kanda and their two minor children live in a home at Kaneohe, title to which, up to June 1977, stood in the names of Mr. & Mrs. Kanda. In February 1977, Mr. & Mrs. Kanda applied for AFDC assistance for themselves and their minor children. This application was denied because they owned an equity in the Kaneohe home property in excess of $40,000. In June 1977, acting upon the advice of Legal Aid Society of Hawaii counsel, Mr. & Mrs. Kanda conveyed this home property irrevocably to themselves as trustees for the future educational needs of the two minor children, income and corpus of the trust estate to be distributed to the beneficiaries as each reached the age of 25. The following month, Mr. & Mrs. Kanda again applied for AFDC assistance for themselves and their two minor children, now asserting that the real property was not a currently available resource. This second application was denied because the "assistance household" owned an "equity" in home property in excess of $40,000. This suit followed.

Plaintiff Josephine Jung and her three minor children were receiving AFDC assistance. In March 1977 she received advance notice of termination of assistance because her equity in the home property at Kailua exceeded $40,000. Mrs. Jung claimed that necessary repairs and costs of sale should be deducted with the result that her equity would be below this limit. In a fair hearing decision on May 12, 1978, the DSSH fair hearing officer found that Mrs. Jung held only a one-half interest in the home property because her ex-husband had failed to convey to her his one-half interest in the same property as required by the divorce decree. On this basis, her equity in the home property was calculated to be less than $40,000 even by DSSH calculations. AFDC assistance was continued. Defendants argue that Mrs. Jung has no standing to proceed with her action because she has not been denied the assistance she was receiving. However, once her ex-husband complies with the divorce decree, she will presumably again be noticed for termination of benefits,[21] leaving at issue her original disagreements with the DSSH over the deduction of necessary repairs and costs of sale in calculating the value of her equity in this home property.

Plaintiffs Robert and Carrie Sills and their three minor children reside in Mr. & Mrs. Sills' home at Nanakuli. In May 1977 Mrs. Sills was sent advance notice of termination of AFDC assistance because Mr. & Mrs. Sills had an equity in the home property in excess of $40,000. In reaching this conclusion, the DSSH had failed to deduct a loan secured by a recorded second mortgage. If this second mortgage loan were to be deducted, the equity in the home property would be less than $40,000. By a fair hearing decision of May 17, 1978, the DSSH fair hearing officer determined that the second mortgage encumbrance should have been considered, reversed the action taken by the DSSH, and restored the grant of AFDC assistance. Defendants argue that Mr. & Mrs. Sills have no standing to proceed with their action because they have not been denied the assistance they were receiving. Defendants are correct, provid-

21. Mrs. Jung was given one year to clear up this situation. I am informed by counsel that her ex-husband has now complied with the divorce decree and conveyed to her his one-half interest in the home property. Thereafter Mrs. Jung was again declared to be ineligible for AFDC assistance. A fair hearing has been held on her appeal of this denial, with no decision yet.

ing the defendants acquiesce in the decision of the fair hearing officer.[22]

Plaintiff Zerelda Makekau and her adult son and two minor daughters reside in their own home in Kapalama. As of August 1, 1978, the DSSH terminated AFDC assistance to the Makekau assistance household because a Transfer Certificate of Title [23] to the Kapalama home property shows Mrs. Makekau as sole owner of the property with an equity in excess of $40,000. Mrs. Makekau claims that this is an error, as she received her interest in the property by devise under the Last Will and Testament of her grandaunt, Evonne Silva, which Will specifically devises the home property to her "for and during her natural life and upon her death or if she should predecease me . . . unto her children . . . ." Clearly the fair market value of a life interest would be less than $40,000. The DSSH refused to go behind the wording of the Transfer Certificate of Title. I granted a preliminary injunction restoring assistance in this situation based upon my understanding that Mrs. Makekau held only a life interest in the home property.[24] There remains the question as to whether the DSSH may still consider the home property as a retained resource because all interests in the home property are owned by members of the assistance household.

## ANALYSIS AND ARGUMENT

Federal requirements allow each State to set its own limit on the dollar value of the equity in home property that may be reserved without rendering an applicant ineligible for AFDC assistance.[25] Hawaii has set this limit at $40,000.[26] This is not an unreasonable figure.[27]

In the language of Social Security regulations, equity in home property is a resource.[28] In determining whether this resource exceeds $40,000, the resource must be reasonably evaluated.[29]

A reasonable method of evaluating a person's equity in real property is to determine the fair market value of that equity and to subtract therefrom any legally enforceable encumbrances thereon.[30] This is the method followed by the DSSH, except for some confusion as to what encumbrances are taken into account.[31]

H.P.W.M. § 3392(1)(b) by its terms recognizes only "the outstanding mortgage" as a deduction from fair market value in deter-

22. I am informed by counsel that Mr. & Mrs. Sills were again declared to be ineligible for assistance because their equity in home property exceeded $40,000 even considering the second mortgage. A fair hearing on their appeal of this denial is pending.

23. A Transfer Certificate of Title is issued by the Land Court of the State of Hawaii pursuant to the provisions of Hawaii's statute for the registration of land.

24. The Rule in *Shelley's Case* is not law in Hawaii. *Thurston v. Allen*, 8 Haw. 391 (1892); *Estate of Holt*, 19 Haw. 78 (1908).

25. *National Welfare Rights Organization v. Mathews*, 174 U.S.App.D.C. 410, 417–418, 533 F.2d 637, 644–45 (1976).

26. H.P.W.M. § 3392(1)(a)(1).

27. Hawaii's maximum is very generous. *See Green v. Barnes*, 485 F.2d 242, 244 (10th Cir. 1973) ($10,000 in Oklahoma).

28. 45 C.F.R. § 233.20(a)(3)(1).

29. 45 C.F.R. § 233.20(a)(3)(ii)(E).

30. *Crowder v. State Department of Social Security*, 42 Wash.2d 782, 259 P.2d 387, 390 (1953). In an earlier version as revised as of October 1, 1975, 45 C.F.R. § 233.20(a)(3)(i) provided in part: "Real and personal property shall be valued at their gross market value including encumbrances." But the requirements that resources be "reasonably evaluated" and "currently available" remained! *National Welfare Rights Organization v. Mathews*, 174 U.S.App.D.C. 410, 420, 533 F.2d 637, 647 (1976) held that this 1975 version of the regulation did not mean what it said. "We cannot accept HEW's contention that because the property itself is available, gross market value (and not the equity) is available."

31. Note that recognizing all encumbrances as proper deductions from fair market value for purposes of determining equity in home property does not bind the DSSH to recognize payments on all of these encumbrances as shelter cost under H.P.W.M. § 3392(4)(a). This provision (regarding shelter cost) should be spelled out more precisely.

mining equity in home property. This would seem to be an unreasonable limitation if interpreted to mean that only one purchase money mortgage loan or one home improvement mortgage loan will be allowed as a deduction. An applicant for AFDC assistance might well have made a portion of equity in home property available for support and maintenance by obtaining a second or third or further mortgage loan secured by the home property. This might well have been a more rational partial solution to the needs of the prospective assistance household than to have sold the home property.

Furthermore, there may be other encumbrances, such as liens for unpaid real property taxes or for improvement assessments or for mechanic's and materialman's liens or for recorded judgments, that effectively reduce the dollar value of the equity one has in home property.

The defendants now contend, if I understand their posture correctly, that any encumbrance enforceable in rem against the home property will be read into the phrase "the outstanding mortgage" in determining the amount to be deducted from fair market value in evaluating equity under H.P. W.M. § 3392(1)(b). If this is so, the wording of the manual is unclear in this regard.

However, in the present posture of this case, with the individual plaintiffs left, this issue may not be before me for decision at this time.[32]

On the other hand, the State is not unreasonable in this connection in refusing to deduct a personal loan not secured by the home property, regardless of the purpose for which the loan was made or of the use to which the borrowed money was actually put. The State may adopt uniform policies and procedures for the deduction of personal loans from fair market value of home property when determining eligibility, but is not required by existing federal statutes or regulations to do so.[33]

Nor is the State unreasonable in refusing to deduct anticipated costs of sale, such as broker's fees, closing costs, and escrow fees, or estimated costs of repairs that might be deemed desirable or even necessary. While the State could allow deductions for these costs if it chose to do so, costs of sale are not a necessary element of any definition of fair market value, and costs of repairs are already included in the appraisal process by which fair market value is calculated.[34]

Plaintiffs' contention that H.P.W.M. § 3392 does not allow for evaluating less than fee simple interests is not supported by the record. Actually, no factual situations remain in which the State took into consideration interests in real property less than what the State contended amounted to a fee simple interest in the entire property.[35]

32. If defendants concede that Mr. & Mrs. Sills' second mortgage loan is deductible from fair market value, there is no further issue in this area as to any of the individual plaintiffs.

33. I do not intend to express any opinion as to whether under its existing policies and procedures the DSSH is in fact reducing market values of home property by the amounts of unsecured loans. Apparently Judge Fong of the First Circuit Court, State of Hawaii, has so decided as to an unsecured loan from a relative applied toward the purchase of the home property. That issue is not before me. In a proper case, this might involve a determination whether allowing a deduction in one situation and not in another violated the requirement of 45 C.F.R. § 233.20(a)(3)(ii) of uniform application of "policies governing the reserves and allowances and disregard or setting aside of income and resources."

34. Depreciation for normal wear and tear is built into the appraisal process. Special circumstances may be brought to the attention of the agency and supported by an objective independent appraisal.

35. One could argue that the wording of H.P. W.M. § 3392 excludes consideration of anything less than fee simple interests, although a contrary interpretation has no practical significance in any of the situations of the individual plaintiffs. In each case, the State is taking the position that the members of the "assistance household" together own all of the interests in the home property so that regardless of what value is put on each member's interest the sum of all interests will add up to the fee simple value of the whole property. However, the argument is not very convincing in any event, as H.P.W.M. § 3392(1)(a)(1)(a) specifically re-

■ The State does consider equity in home property to be the sum of the equities held by all members of the assistance household, and not just the equity, if any, held by the applicant or recipient.[36] Subject to the requirement, discussed below, that any such equity be currently available, this State policy, in my opinion, is authorized, if not required, by federal statutes and regulations. 42 U.S.C. § 602(a)(7) specifically provides, in part, that a State plan for AFDC assistance must "provide that the State agency shall, in determining need, take into consideration any other . . . resources of any child or relative claiming aid to families with dependent children, or of any other individual (living in the same home as such child and relative) whose needs the State determines should be considered in determining the need of the child or relative claiming such aid . . . ." As a corollary to this proposition, equities in home property held by persons who are not members of the assistance household should not be considered.

■ Use by the State of a formula for estimating fair market value of home property based upon assessed value for real property tax purposes has not been shown to be unreasonable.[37] Plaintiffs contend only that an applicant should be allowed to present an objective appraisal for the purpose of showing that, as applied to the particular home property in question, the manual's formula gives too high a value. I am not entirely clear as to whether the State takes the position that an applicant may not do so. Plaintiffs argue that the manual's formula has been interpreted and applied by DSSH personnel as the mandatory and exclusive method of evaluating equity in home property. The State argues that this formula is only an example of one approved evaluation method.

In my opinion, the State may, when reviewing an application for AFDC assistance, estimate market value in the manner set forth in H.P.W.M. § 3392(1)(a).[38] In the event that the applicant wishes to show that the figure obtained by the State is too high, the applicant should be given an opportunity to present an objective appraisal by a qualified appraiser setting forth whatever different figure the applicant contends should be used in determining eligibility for assistance.[39] The State need not accept the applicant's appraisal figure but should give this appraisal fair consideration in reaching its own conclusion.[40] To the extent that these procedures are not allowed under the wording or in the application of H.P.W.M. § 3392(1)(b), that provision should be clarified and DSSH personnel should be appropriately instructed.

■ Equity in home property may not be considered as being a reserved resource within the meaning of 45 C.F.R. § 233.-20(a)(3)(i) unless that equity is currently available within the meaning of 45 C.F.R. § 233.20(a)(3)(ii)(D).[41]

---

fers to "lease" land as well as "fee simple" land.

**36.** Oral representation of counsel for the defendants at conference on June 20, 1979, for clarification of arguments.

**37.** The court takes judicial notice of the fact that tax assessed value is usually less than fair market value and in Hawaii is presently set at 60% of fair market value. *See* Defendants' Memorandum in Support of Summary Judgment 10–16 (filed September 19, 1978).

**38.** The policy allows for adjustments to keep in step with changes in the real property tax assessment.

**39.** I believe this is implicit in the requirement of 45 C.F.R. § 233.20(a)(3)(ii)(E) that "income and resources will be reasonably evaluated."

**40.** Again this is implicit in the requirements of 45 C.F.R. § 233.20(a)(3).

**41.** *National Welfare Rights Organization v. Mathews,* 174 U.S.App.D.C. 410, 422, 533 F.2d 637, 649 (1976).
I am aware of two other cases pending in this court, *Jarra v. Chang,* Civil No. 77–0053, and *Newcomb v. Chang,* Civil No. 79–0065, both of which involve the application of H.P.W.M. § 3392(1)(a)(2) regarding real property other than home property. In this situation, the agency limits equity in such other real property to $500 or less as a condition of eligibility. Mrs. Jarra filed her action on February 18, 1977, as a class action for declaratory and injunctive relief. Judge Wong issued a temporary restraining order. An amended complaint was filed on March 16, 1977, with six named plaintiffs. Other named plaintiffs sought and

When dealing with home property, the wording of this latter regulation is not particularly apt. A resource is "considered available when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance." The regulation applies to a variety of "income" and "resources" having a wide range of liquidity. Nevertheless, a common sense application of the regulation as applied to home property leads me to the opinion that equity in home property is currently available when there is no legal impediment to the immediate sale of the equity in the open market.[42]

Plaintiffs point out that a listing for sale and an actual sale are not simultaneous events. A sale may not be consummated for many months. Yet this cannot be a factor in determining current availability. Firstly, by the very nature of the asset, real property would never be currently available if that meant being equivalent to cash in hand. Secondly, a depressed market situation would be reflected in fair market value. Thirdly, the regulation contemplates that home property within the maximum value allowed will not be sold but will be used as a residence by the assistance household.

The possibility of there being legal impediments to sale is recognized in H.P.W.M. § 3392(2)(a). This subsection provides, quite properly, that "[r]eal property tied up by legal conditions or unclear title is not considered a resource until it [the legal impediment] has been removed." Plaintiffs contend, however, that the further provisions of H.P.W.M. § 3392(2), requiring the applicant or recipient to complete in one year whatever steps are necessary to make this real property a currently available resource, impermissibly restrict the definition of a currently available resource set forth in 45 C.F.R. § 233.20(a)(3)(ii)(D). Logically, there may well be difficulties with a hard and fast one year limitation on clearing up all legal impediments to the immediate sale of real property. Those of us who dwell in the halls of justice are accustomed to viewing one year as a relatively short time. That some requirement of self-help may be included in a State plan seems to be permitted by federal regulations. While I have so far found no specific reference to resources, 45 C.F.R. § 233.20(a)(3)(ix) sets out a requirement that a State plan "[p]rovide that the agency will establish and carry out policies with reference to applicants' and recipients' potential sources of income that can be developed to a state of availability."

However, in the present posture of the case, this issue is not before me for decision at this time.

A final issue is the extent to which a prospective applicant or recipient of AFDC assistance may rearrange assets to avoid holding a currently available equity valued at more than $40,000 in home property.[43] Two extreme situations are easily resolved. A fraudulent mortgage purporting to secure a non-existent loan may be disregarded. A bona fide mortgage securing a bona fide loan to meet current needs should be considered.[44] But what of the situation of Mr. & Mrs. Kanda, whereby they have sought to remove home property as a currently available resource in order to

were granted the right to intervene. Some plaintiffs withdrew. The motion to determine class was denied by Judge Wong by order filed July 27, 1977. Preliminary injunctions were issued as to some named plaintiffs.
Judge Wong made findings in certain cases that the other real property was not actually and currently available as a resource. The case is still pending.
Mr. Newcomb obtained a preliminary injunction from Judge Bruce Thompson (sitting by assignment in Hawaii) on a finding that Mr. Newcomb's other real property was not actual-

ly and currently available. The case is still pending.

42. Real property by definition is never a "liquidated sum."

43. An overriding consideration is a basic purpose of the Social Security Act that only needy individuals shall be eligible. *See National Welfare Rights Organization v. Mathews,* 174 U.S. App.D.C. 410, 417, 533 F.2d 637, 644 (1976).

44. That is, the amount of the loan should be deducted from fair market value.

become eligible for AFDC assistance by conveying the property to themselves in an irrevocable trust for the *future educational* needs of their two minor children, proceeds and corpus not to be distributed until each child reaches the age of 25 years?

█ I am of the opinion that the DSSH was justified in refusing to recognize the Trust Agreement of June 6, 1977, as in any way reducing Mr. and Mrs. Kanda's control over the home property.

All interests in the property are still owned by members of the assistance household. There has been no actual change in occupancy of the home property. All expenses of maintaining the trust property are chargeable to the trust.

The transfer of the property into trust was without consideration and was effected after an earlier application for AFDC assistance had been denied on the ground that the equity in the home property exceeded $40,000. This is a violation of the intent of H.P.W.M. § 3392(3)(a) which states that a "homeowner who assigns or transfers property without financial benefits equivalent to the amount that can be obtained in the open market declares himself and those dependent on him ineligible."

The attempted limitation upon the use of the trust assets to *future educational* needs may be effective if the trust were established by someone who is not legally responsible for the children's basic necessities. But the voluntary action of Mr. and Mrs. Kanda to isolate their own assets from their obligation to provide these necessities while retaining full control over these same assets, when done for the purpose of becoming eligible for AFDC benefits, may be treated by the DSSH as a fraudulent transfer.

There are other issues concerning the Kanda applications with respect to the determination of fair market value of the home property in the light of this decision which are not ripe for summary judgment.[45]

## SUMMARY

This action may not be maintained as a class action. The class heretofore certified should be decertified.

The remaining individual plaintiffs in this action are Mr. & Mrs. Kanda and their two minor children, Mrs. Jung, Mr. & Mrs. Sills, and Mrs. Makekau.

H.P.W.M. § 3392(1)(b) should be reworded to make clear that an AFDC assistance applicant or recipient is permitted to submit an objective appraisal by an independent appraiser of fair market value of relevant equities in home property for appropriate consideration by the State agency.

H.P.W.M. § 3392(1)(b) should be reworded to make clear that equities in home property of less than fee simple interests are not evaluated as if they were fee simple interests.

H.P.W.M. § 3392(1)(b) should be reworded to make clear what encumbrances are to be considered in determining equity in home property.

The State may employ assessed value for real property tax purposes where available as a basis for estimating fair market value of the property assessed.

The State need not deduct costs of sale or costs of repairs from fair market value when determining an AFDC applicant's or recipient's equity in home property.

Equity in home property may not be considered as being a reserved resource within the meaning of 45 C.F.R. § 233.20(a)(3)(i) unless that equity is currently available within the meaning of 45 C.F.R. § 233.-20(a)(3)(ii)(D).

Equity in home property is currently available when there is no legal impediment to the immediate sale of the equity in the open market.

The State may consider currently available equity in home property to be the sum of the currently available equities held by all members of the assistance household.

**45.** There may be alternative approaches to the Kandas' situation that might result in making them eligible for assistance.

DSSH personnel should be properly instructed in the meaning and application of the policies and procedures to be followed under H.P.W.M. § 3392.

The extent to which the State must recognize encumbrances which are legally enforceable in rem against home property in determining equity in home property is not before me for decision at this time, except only for the issue as to the deduction of a second mortgage loan in the case of Mr. & Mrs. Sills and then only if the defendants take the position that this second mortgage loan is not deductible.

The extent to which the State may ignore unsecured loans in determining equity in home property is not before me for decision at this time.

The validity of the provision of H.P.W.M. § 3392(2)(a) setting a limit of one year within which to clear up legal impediments to making equity in home property a currently available resource is not before me for decision at this time.

The extent to which a prospective applicant or recipient of AFDC assistance may rearrange assets to avoid holding a currently available equity valued at more than $40,000 in home property depends upon the circumstances of each case.

The State was justified in refusing to recognize the Trust Agreement of June 6, 1977, executed by Mr. & Mrs. Kanda, as in any way reducing the value of the equity in the home property to be considered in determining eligibility for AFDC assistance.

## CONCLUSION

Partial summary judgment shall issue in accordance with this decision. The parties shall attempt to agree upon a form of judgment within 30 days or such further time as may be allowed, or if they cannot agree, shall submit their separate suggestions as to the form of judgment within the time set.