EVANS *v.* DEPARTMENT OF SOCIAL SERVICES

1. SOCIAL SECURITY AND PUBLIC WELFARE—AID TO DEPENDENT CHILDREN—ELIGIBILITY—SOCIAL WELFARE ACT.

The Social Welfare Act establishes conditions restricting the category of children entitled to aid to dependent children which parallel federal eligibility standards and require that such children be deprived of parental support or care by death, continued absence from the home, or physical or mental incapacity of a parent and be under age 18, or under 21 for students regularly attending classes (42 USC § 601 *et seq.*; MCLA § 400.56).

2. SOCIAL SECURITY AND PUBLIC WELFARE—AID TO DEPENDENT CHILDREN—SOCIAL WELFARE ACT.

The primary purpose of the aid to dependent children program is to insure the protection of dependent children and any child meeting the statutory criteria for dependency must be provided with assistance (MCLA §§ 400.1, 400.56).

3. SOCIAL SECURITY AND PUBLIC WELFARE—AID TO DEPENDENT CHILDREN—ENTITLEMENT CONCEPT.

The Department of Social Services in administering the aid to dependent children program must be guided by the concept of entitlement which means that an ADC claimant is entitled to have his interest in such assistance considered in accordance with statutory criteria (MCLA § 400.56).

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 48 Am Jur, Social Security, Unemployment Insurance and Retirement Fund § 2.
[3, 4] 42 Am Jur, Public Administrative Law § 99.
[4] 48 Am Jur, Social Security, Unemployment Insurance and Retirement Fund § 50.
[5] 41 Am Jur, Poor and Poor Laws §§ 35–42.

4. Social Security and Public Welfare—Social Welfare Act—Public Assistance—Cancellation.

    Although the Social Welfare Act empowers the Department of Social Services to revoke aid to dependent children for cause, it fails to indicate what constitutes "cause" for cancellation; consequently, it may not be concluded that the legislature intended that the department determine what conduct justifies cancellation of public assistance where the act empowers the department to revoke assistance only where a recipient no longer meets the objective criteria for eligibility (MCLA §§ 400.43, 400.56).

5. Social Security and Public Welfare—Aid to Dependent Children—Denial of Assistance—Welfare Violation—Failure to Make Restitution.

    Department of Social Services could not deny assistance to plaintiff who had been convicted of welfare fraud because she failed to make restitution in the amount ordered by the trial court where her children, as dependents, were not only eligible for relief but had done nothing to warrant cancellation and refusal of aid to them, there being nothing in the Social Welfare Act to suggest that failure to make restitution would disqualify one otherwise qualified or that such a legislative intent could be implied (MCLA § 400.1 *et seq.*).

Appeal from Wayne, Victor J. Baum, J. Submitted Division 1 February 4, 1970, at Detroit. (Docket No. 7,018.) Decided March 25, 1970.

Application by Lue Ella Evans to the Michigan Department of Social Services and R. Bernard Houston, Director for reinstatement of aid to dependent children. Application denied. Plaintiff appealed to circuit court. Summary judgment for plaintiff. Defendants appeal. Affirmed.

*Thomas L. Smithson* and *Alan W. Houseman,* Neighborhood Legal Services Centers, for plaintiff.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Maxine Boord Virtue,*

Assistant Attorney General, and *William R. Rudell,* Assistant Attorney General, for defendant.

Before: Levin, P. J., and J. H. Gillis and Bronson, JJ.

J. H. Gillis, J. This is a welfare rights appeal. The question presented is one which has in recent years received frequent judicial consideration. At issue is whether the Michigan Department of Social Services acted lawfully in denying welfare assistance to plaintiff Lue Ella Evans and her six children.[1]

## I

### Facts

On April 4, 1967, plaintiff Evans' grant under the aid to dependent children (ADC) provisions of the Michigan Social Welfare Act[2] was cancelled by the Department of Social Services on the ground that she had fraudulently obtained a larger assistance grant than that to which she was entitled. Her case was referred to the prosecutor for institution of criminal proceedings.[3] On July 12, 1967, plaintiff reapplied for ADC assistance but her application was denied on the basis of the pending criminal proceedings. Subsequently, on August 24, 1967, plaintiff was convicted in recorder's court for the

---

[1] Compare, *Reuben K. King* v. *Sylvester Smith* (1968), 392 US 309 (88 S Ct 2128; 20 L Ed 2d 1118; *Shapiro* v. *Thompson* (1969), 394 US 618 (89 S Ct 1322; 22 L Ed 2d 600); *Doe* v. *Shapiro* (D Conn, 1969), 302 F Supp 761; *Dews* v. *Henry* (D Ariz, 1969), 297 F Supp 587; *City of East Orange* v. *W. McCorkle* (1968), 99 NJ Super 36 (238 A2d 489). See generally, Charles A. Reich, "Individual Rights and Social Welfare: The Emerging Legal Issues," (1965) 74 Yale LJ 1245.

[2] MCLA § 400.56 (Stat Ann 1968 Rev § 16.456).

[3] Section 60 of the act, MCLA § 400.60 (Stat Ann 1968 Rev § 16.460), makes it a crime for one to obtain by fraudulent devices a larger amount of assistance than that to which he is entitled,

city of Detroit of welfare fraud and sentenced to
two years probation. The court also ordered plain-
tiff to make restitution to the Department of Social
Services in the amount of $499.

On January 17, 1968, a hearing was held before
Wayne county welfare authorities on plaintiff's
appeal from the denial of her reapplication for ADC
assistance.[4] At the hearing, a memorandum of the
Department of Social Services was read into the
record in support of the denial of assistance. The
memorandum states in part:

"In reference to eligibility following violation that
results in prosecution, the State Office has recently
advised as follows:
" '* * * [I]f the court prescribes restitution,
we have ruled that the client is not eligible for
assistance until either such restitution has been made
or the court revokes that part of the sentence.' "
Memorandum No 60–4, Department of Social Serv-
ices (March 23, 1960). (Emphasis supplied.)

Since the plaintiff had not complied with the re-
corder's court order of restitution, the hearing
referee, apparently relying on Memorandum 60–4,
concluded that plaintiff was ineligible to receive
ADC assistance. This decision was affirmed by state
welfare authorities, and on February 8, 1968, de-
fendant Bernard Houston, Director of the Michigan
Department of Social Services, informed plaintiff
that "Subsequent court action resulted in a penalty
of probation and restitution which is still in effect.
For this reason you cannot be found eligible for a
grant at this time."

An appeal from the department's denial of assist-
ance was claimed and timely filed in the Wayne

---

[4] Under the Social Welfare Act, an ADC claimant denied assistance
is entitled to a fair hearing contesting the denial. See MCLA
§ 400,9 (Stat Ann 1968 Rev § 16.409).

county circuit court.[5] The circuit court granted plaintiff Evans' motion for summary judgment, GCR 1963, 117.2(3), and reversed the decision of defendant. The trial court held that the department's cancellation and denial of assistance was improper and ordered retroactive payment of the ADC grant.

For reasons which will appear, we affirm.

## II

## The ADC Program

The ADC program is one of the major categorical public assistance programs established by the Federal government under the Social Security Act of 1935. The program is financed largely by federal funds, on a matching basis, and is administered by the states. In order to participate in the program and take advantage of the substantial federal funds available for distribution to needy children, states are required to submit an ADC plan for the approval of the Secretary of Health, Education, and Welfare (HEW). 42 USC §§ 601, 602, 603 and 604. The plan must conform with several requirements of the Social Security Act and with the rules and regulations promulgated thereunder by HEW. 42 USC § 602. For an extended discussion of the history, scope, and the basic purposes of the ADC program, see *Reuben K. King* v. *Sylvester Smith* (1968), 392 US 309 (88 S Ct 2128; 20 L Ed 2d 1118).

Under the Social Security Act, states are free to set standards of need, as well as to determine the level of benefits by the amount of funds it devotes to the ADC program. See *Reuben K. King* v. *Sylvester Smith, supra*, 392 US at 318, 319 (88 S Ct

---

5 The appeal was taken pursuant to the contested case provisions of the Administrative Procedure Act, MCLA § 24.108 [Stat Ann 1969 Rev § 3.560(21.8)].

at 2133; 20 L Ed 2d at 1126). However, within the framework of state-determined standards of need, a state must:

"[P]rovide * * * that all individuals wishing to make application for aid to families with dependent children *shall* have opportunity to do so, and that aid to families with dependent children *shall be furnished* with reasonable promptness to *all* eligible individuals." 42 USC § 602(a)(10). (Emphasis supplied.)

And see *Williams* v. *P. Dandridge* (D Md, 1968), 297 F Supp 450, 454. The category of "eligible individuals" singled out for welfare assistance by ADC is the "dependent child," who is defined in § 406 of the Act, 42 USC § 606. The aid furnished is to "needy dependent children and the parents or relatives with whom they are living." 42 USC § 601. Although the needs of the parent or relative with whom the child is living may be considered by the state in determining the amount of aid, 42 USC § 606(b), the primary purpose of ADC assistance is the protection of needy children. "Protection of such children is the paramount goal of AFDC."[6] *Reuben K. King* v. *Sylvester Smith, supra,* 392 US at 325 (88 S Ct at 2137; 20 L Ed 2d at 1130).

The state of Michigan, like all other states, participates in the ADC program. By PA 1939, No 280, (MCLA § 400.1, *et seq.,* Stat Ann 1968 Rev § 16.401, *et seq.*),[7] it likewise became the policy of this state to provide protection, welfare, and assistance to dependent children. The Department of Social Services was established to administer programs of both general and categorical assistance,

---

[6] Under Title IV of the Social Security Act, the Federal terminology for what we have called the ADC program is "aid to families with dependent children," (AFDC). See 42 USC § 606(b).

[7] Hereafter referred to as "The Social Welfare Act."

including ADC.[8] The department was charged with developing the requisite ADC plan in order to obtain the Federal moneys available under the Social Security Act.[9] Under the Social Welfare Act, the legislature empowered the department to adopt any rules and regulations necessary to enable the state of Michigan to participate in the distribution of Federal funds. The department was empowered "to do all things reasonable and proper to conform with all Federal requirements pertaining to methods and standards of administration."[10]

Section 56 of the Social Welfare Act[11] establishes various conditions which restrict the category of dependent children entitled to ADC in the state of Michigan. For example, such children must be "deprived of parental support or care by the death, continued absence from the home, or physical or mental incapacity of a parent."[12] Those entitled to ADC assistance must be under the age of 18, or under 21 and a student regularly attending classes.[13] In general, ADC eligibility in Michigan parallels Federal eligibility standards.[14] And, as in the case under the ADC provisions of the Social Security Act, a fair reading of Section 56 indicates that protection of dependent children is the primary purpose of such assistance in Michigan.

Finally, the legislative mandate is clear: If a child is "dependent" within the meaning of § 56 of

---

8 MCLA § 400.1 (Stat Ann 1968 Rev § 16.401).
9 MCLA § 400.10 (Stat Ann 1968 Rev § 16.410).
10 MCLA § 400.10 (Stat Ann 1968 Rev § 16.410).
11 MCLA § 400.56 (Stat Ann 1968 Rev § 16.456).
12 MCLA § 400.56(a) [Stat Ann 1968 Rev § 16.456(a)].
13 MCLA § 400.56(c) [Stat Ann 1968 Rev § 16.456(c)].
14 *Compare* MCLA § 400.56 (Stat Ann 1968 Rev § 16.456) *with* 42 USC § 606. One noteworthy exception is the requirement that either child or his parent must have resided in Michigan for 1 year preceding application for ADC assistance. See MCLA § 400.56(d) [Stat Ann 1968 Rev § 16.456(d)]. In *Shapiro* v. *Thompson, supra,* note 1, like residency requirements were held unconstitutional by the United States Supreme Court.

the Social Welfare Act, "Aid  *  *  *  *shall* be provided  *  *  *  ."[15]  (Emphasis supplied.)  In administering the Social Welfare Act, the department is to be guided by the concept of entitlement.[16] That concept means:

"[O]bjective eligibility safeguards against revocation or loss of benefits, and it means that the individual's rights, whatever they may be, should be known to him and enforced through law."  Reich, "Individual Rights and Social Welfare: The Emerging Legal Issues," 74 Yale LJ 1245, 1256 (1965).

In short, the ADC claimant is entitled to have his interest in such assistance considered in accordance with statutory criteria.

## III

### The Department's Contentions

On appeal, defendant contends that the action of the department in refusing ADC assistance to plain-

---

[15] MCLA § 400.56 (Stat Ann 1968 Rev § 16.456).  Section 56(e) of the Act is to the same effect:  "The amount of assistance which *shall* be granted for any dependent child  *  *  *  ."  MCLA § 400.56(e) (Stat Ann 1968 Rev § 16.456[e]).  (Emphasis supplied.) *Compare* the above sections *with* 42 USC § 602(a)(10), quoted in text *supra.*

[16] On appeal, defendant contends that the ADC grant is a gratuity, but surely, even if this is so in the sense that it is unearned and the program is an act of compassion by an enlightened government, those charged with administering the program cannot as a matter of whim revoke a benefit.  There must be adequate grounds for revocation; they must be valid grounds.  Manifestly, the "gratuity" (right/privilege) analogies prove too much.  See James J. Graham, "Public Assistance:  The Right to Receive; The Obligation to Repay," 43 NYU LR 451, 467–475; Reich, *supra,* note 1.  We might add that elsewhere the department has characterized the welfare claimant's interest in public assistance as a right.

"Application shall be considered a right of any individual who considers himself eligible for assistance for himself or for another, and shall not be denied or limited."  1954 Administrative Code, Rules & Regulations of the Michigan Social Welfare Commission, R 400.1 (1).  For our ability to judicially notice the published rules and regulations of the department, see MCLA § 24.80 (Stat Ann 1969 Rev § 3.560[16]).

tiff was in accordance with statutory eligibility criteria under the Social Welfare Act. Although the defendant concedes that plaintiff Evans' children are "dependent" within the meaning of § 56 of the Act, it insists that they are, nevertheless, ineligible for aid by virtue of § 43 of the Social Welfare Act. That section reads:

"All assistance granted under this act shall be reconsidered from time to time, or as frequently as may be required by the state department. After further investigation by the county department of social welfare, the amount and manner of giving assistance may be changed, or the assistance may be withdrawn if the state department finds the recipient's circumstances have changed sufficiently to warrant such action. *It shall be within the power of the state department at any time to cancel and revoke assistance for cause,* and it may for cause suspend payments for assistance as it may deem proper, subject to appeal and hearing by the recipient as provided for in section 9. The provisions of this section shall be mandatory only with respect to old age assistance, aid to dependent children, aid to the blind, aid to the permanently and totally disabled or any other function financed in whole or in part by federal funds." MCLA § 400.43 (Stat Ann 1968 Rev § 16.443). (Emphasis supplied.)

It is the department's contention that plaintiff Evans' failure to comply with the recorder's court order of restitution constitutes cause for revocation of assistance within the meaning of § 43. We cannot agree.

The defendant's argument, if accepted, necessarily requires the conclusion that the state legislature has committed to the department's discretion all decisions concerning eligibility for welfare assistance under the Social Welfare Act. Nowhere in the act is there any indication of just what conduct consti-

tutes "cause" for cancellation of a welfare recipient's grant. The term is simply not defined. In the absence of any standards by which to judge a termination for cause, conduct which the department alone regards as reprehensible could serve as justification for denying welfare assistance. We do not believe that § 43 has the effect which defendant claims. The history of welfare administration in the United States negates any implication that, by enacting § 43, the Michigan legislature empowered the department to determine what conduct justifies denial of assistance. See *Reuben K. King* v. *Sylvester Smith, supra,* 392 US at 320–327 (88 S Ct at 2134–2139; 20 L Ed 2d at 1127–1131). Indeed, had the legislature intended so drastic a result,[17] there is good reason to suppose that it would have made its intent more explicit. That same legislature had no difficulty in making it abundantly clear just what conduct on the part of a recipient justifies refusing aid;[18] and, even then, aid can be refused by the department only under limited circumstances.[19]

We think it clear that § 43 empowers the department to withdraw assistance only where, for example, a recipient of ADC no longer meets the objective eligibility criteria established in § 56 of the act. So construed, the power to revoke for cause is limited to cancellation based on ineligibility under the standards set forth in the Social Welfare Act. We reach this conclusion for several reasons.

First, various provisions of the Social Welfare Act reflect an intent on the part of the Michigan

---

[17] "In a society where a significant portion of the population is dependent on social welfare, decisions about eligibility for benefits are among the most important that a government can make." Reich, *supra,* note 1, at 1253.

[18] For example, § 40 of the Act, MCLA § 400.40 (Stat Ann 1968 Rev § 16.440), authorizes the department to cancel assistance upon failure of a recipient to file with the department a statement of financial condition within 30 days after demand for such a report.

[19] See the discussion of § 61 of the act, *infra.*

legislature to guarantee compliance by the state with the provisions of the Social Security Act.[20] The State Department of Social Services was empowered to take all necessary steps to conform with Federal requirements pertaining to state categorical welfare administration.[21] One such requirement regarding state administration of ADC program is that "the state agency will make such reports * * * containing such information, as the Secretary (HEW) may from time to time require * * * ." 42 USC § 602. In response to this Federal requirement, the legislature specifically required the state department to "make such reports * * * containing such information, as may be required from time to time under the provisions of the social security act * * * ."[22] An additional Federal requirement regarding state ADC plans, one established by HEW, is that, in order to qualify as an acceptable state plan, the plan must require the agency administering the program to periodically review "a recipient's circumstances [which] may affect his eligibility or the amount of assistance."[23] Clearly, the purpose of this requirement is to avoid payment of Federal ADC funds to individuals who, because of changing family status or need, no longer qualify for assistance. See Comment, "Withdrawal of Public Welfare: The Right to a Prior Hearing," 76 Yale LJ 1234 (1967). It was in response to this Federal requirement that we think the legislature enacted § 43 of the Social Welfare Act, requiring the department to periodically review an ADC recipient's circumstances in order

20 See, for example, the declaration of policy contained in the act's title.
21 MCLA § 400.10 (Stat Ann 1968 Rev § 16.410). And see text accompanying note 10, supra.
22 MCLA § 400.10 (Stat Ann 1968 Rev § 16.410).
23 HEW, Handbook of Public Assistance Administration, pt IV, § 2200 (d).

to reconsider eligibility status.[24]   The "circum-
stances" to be investigated by the department are
those eligibility criteria established in § 56 of the
Act.[25]

Section 43, in our view, authorizes the department
to revoke assistance only where a recipient is no
longer "dependent" within the meaning of § 56, or
is no longer in financial need.

We refuse to infer any broader delegation of
power.   To do so would permit the department
under § 43 of the act to revoke assistance for a good
reason, a bad reason, or no reason at all.   In the
absence of objective standards by which to judge
a decision to revoke "for cause," an appeal from
such a decision would be meaningless.   We do not
think that the legislature, when it conferred upon
the department the power to revoke for cause, *"sub-
ject to appeal and hearing by the recipient,"* intended
that there be a total absence of such standards.   On
the contrary, standards are provided; they are those
contained in § 56.   A revocation for cause under § 43
of the act is limited to cancellation based on in-
eligibility under those standards.

This is not to say that the department is power-
less under all circumstances to revoke assistance to
those otherwise qualified under the act.   The legisla-
ture has clearly empowered the department to take

---

[24] The inference that § 43 was enacted in response to a Federal
requirement under the Social Security Act is supported by the fact
that the section was made mandatory only for categorical assistance
programs, including ADC, financed in whole or in part by Federal
funds.

[25] Compare, 1954 Administrative Code, Rules & Regulations of the
Michigan Social Welfare Commission, R 400.17:

"Reinvestigation shall be made at least once each year, or more
frequently as the probability of change in situation indicates, to
determine *continuing eligibility and changes in amount of assistance
needed.*"   (Emphasis supplied.)

This rule, apparently adopted to implement § 43, makes sense
only if "continuing eligibility" is measured by those criteria estab-
lished under § 56 of the act.

such action in two limited circumstances.[26]    For example, § 61 of the act[27] provides:

"Whenever any person receiving aid, relief or assistance is convicted of an offense under this act, or of any other crime or offense and punished by imprisonment for one month or longer, the county board may thereupon direct that all payments for aid, relief or assistance under this act shall cease and shall not be made during the period of such imprisonment."

We think such sections of the act are exclusive. They enumerate the only situations deemed significant enough by the legislature to warrant denial of aid.

In the present case, the department concedes that plaintiff's children are eligible for ADC relief under § 56 of the act. Moreover, those children have done nothing which, under the act, warrants cancellation and refusal of aid to them.[28]    Nothing in the act suggests that plaintiff's failure to make restitution disqualifies her children from aid, and there is no provision of the act from which such legislative intent can be implied.    The department's action in refusing aid adds a disqualification of plaintiff's

---

[26] See notes 18 and 19, *supra,* and accompanying text.

[27] MCLA § 400.61 (Stat Ann 1968 Rev § 16.461).

[28] Whether the department would be justified in withholding any portion of the ADC grant allocable to plaintiff under the act is a question not presented. The record does not reveal whether plaintiff's needs were considered in determining the amount of the ADC grant. Moreover, the department has not argued this question either on appeal or at the trial below.

Assuming, *arguendo,* that plaintiff was the recipient of a portion of the grant, the department may be justified as an unpaid creditor in withholding plaintiff's portion of the grant until she has repaid, or been credited with, the amount defrauded.    This was not, however, the action sought to be justified by the department in this case.    Here, the department contends that it may terminate and permanently refuse assistance payable to plaintiff as trustee for her children to be used for their benefit until the defrauder pays back the amount unlawfully obtained.    Our holding is limited to this latter contention.

children not provided by the act. This the department has no power to do. Consequently, we hold such action invalid on the ground that it imposes an additional condition of eligibility not required by the Social Welfare Act. *Cf. Reuben K. King* v. *Sylvester Smith, supra; Doe* v. *Shapiro* (D Conn, 1969), 302 F Supp 761. The department's action in refusing ADC assistance was in square conflict with the mandatory provisions of § 56 of the act, requiring that aid be provided to all eligible individuals.

Defendant's other contentions have been considered. We find them without merit.

Affirmed. No costs, a public question being involved.

All concurred.