PEASE v DIRECTOR OF THE MICHIGAN DEPARTMENT OF
SOCIAL SERVICES

Docket No. 50537. Submitted February 4, 1981, at Lansing.—Decided
April 22, 1981. Leave to appeal applied for.

Karen Pease applied for and was granted aid to families with
dependent children (AFDC). Subsequently, the benefits were
terminated by the Michigan Department of Social Services
allegedly because her family had acquired property worth more
than $2,000 and because she was attempting to divest herself of
property in order to remain eligible for benefits. Mrs. Pease
requested a hearing after receiving notice that her benefits
would be terminated. An administrative law judge ruled that
the department was correct in its findings and affirmed the
department's termination of benefits. Mrs. Pease petitioned the
Ingham Circuit Court for review of the administrative law
judge's decision. Thomas L. Brown, J., entered an order affirm-
ing the decision of the administrative law judge. The petitioner
appeals, alleging that (1) the evidence did not support the
administrative law judge's decision that she transferred prop-
erty for the purpose of qualifying for assistance, and (2) the
transfer-of-assets statute violates the Federal Social Security
Act. *Held:*

1. The administrative law judge's decision that petitioner
transferred property for the purpose of qualifying for assistance
was supported by substantial evidence and should not be dis-
turbed.

2. Despite the fact that the transfer-of-assets provision can be
viewed as an additional eligibility requirement, because it

REFERENCES FOR POINTS IN HEADNOTES
[1] 79 Am Jur 2d, Welfare Laws § 107.
[2] 29 Am Jur 2d, Evidence § 361 *et seq.*
[3] 79 Am Jur 2d, Welfare Laws § 6 *et seq.*
Who is "dependent child" within meaning of §§ 406(a), 407(a), and
408(a) of the Social Security Act (42 USCS §§ 606(a), 607(a), and
608(a)), entitling families to aid for dependent children (AFDC).
23 ALR Fed 232.
[4-7] 79 Am Jur 2d, Welfare Laws §§ 8, 18.
[7] 79 Am Jur 2d, Welfare Laws § 15.

constitutes a device for controlling the allocation of funds and denies benefits only to persons who have transferred assets in order to remain eligible for benefits, which constitutes a form of fraud, the Court of Appeals declines to rule that it is invalid under the federal supremacy doctrine. Invalidation of the transfer-of-assets law could impair the state's capacity to deal with the problem of mounting welfare costs and an increasing financial dependency of many citizens. A finding of conflict between the state and federal statutes would allow abuse of the aid to families with dependent children program, because without the transfer-of-assets provision, persons could become eligible for benefits simply by giving away or signing over control of their assets.

Affirmed.

1. Appeal — Administrative Law — Standard for Review — Aid to Families with Dependent Children — Statutes.

   The proper standard for review of an administrative decision by the Department of Social Services which denies aid to families with dependent children is whether the decision is supported on the whole record by competent, material and substantial evidence (MCL 400.56, 400.56g; MSA 16.456, 16.456[7]).

2. Words and Phrases — Intent.

   Intent is a state of mind which often must be determined by indirect evidence.

3. Social Security — Aid to Families with Dependent Children.

   The aid to families with dependent children program was established by the Social Security Act and has been described as based on a scheme of cooperative federalism; it is financed largely by the federal government on a matching fund basis and is administered by the states (MCL 400.56 et seq.; MSA 16.456 et seq.).

4. Social Security — Aid to Families with Dependent Children.

   States desiring to participate in the aid to families with dependent children (AFDC) program and to obtain federal funds are required to submit an AFDC plan for the approval of the Secretary of the Department of Health and Human Services and the plan must conform with the requirements of the Social Security Act and regulations promulgated thereunder.

5. Social Security — Aid to Families with Dependent Children.

   States are not free to narrow the federal standards that define the categories of people eligible for aid to dependent children;

however the states are given considerable latitude in allocating their aid to families with dependent children resources and each state is free to set its own monetary standard of need and to determine the level of benefits by the amount of funds it devotes to the program.

6. SOCIAL SECURITY — AID TO FAMILIES WITH DEPENDENT CHILDREN.

Federal regulation mandates that states include anti-fraud provisions in their aid to families with dependent children plans (45 CFR 233.110).

7. SOCIAL SECURITY — AID TO FAMILIES WITH DEPENDENT CHILDREN.

Invalidation of the transfer-of-assets provision of the Social Welfare Act could impair the state's capacity to deal with the problem of mounting welfare costs and an increasing financial dependency of many citizens; a finding of conflict between the state and federal statutes concerning aid to dependent children could allow abuse of the aid to families with dependent children program because without the transfer-of-assets provision persons would become eligible for benefits simply by giving away or signing over control of their assets (MCL 400.56g[1][c]; MSA 16.456[7][1][c]).

*Christopher Campbell,* Legal Aid of Central Michigan, for petitioner.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Janis Meija* and *William K. Basinger,* Assistants Attorney General, for respondent.

Before: DANHOF, C.J., and R. M. MAHER and BEASLEY, JJ.

DANHOF, C.J. Karen Pease appeals a circuit court decision upholding the denial by the Michigan Department of Social Services of her claim that her AFDC (Aid to Families with Dependent Children) benefits were improperly terminated.

The termination of benefits was based on §§ 56g(1)(a) and (c) of the Social Welfare Act, which provide:

"(1) Aid to dependent children may be provided to a dependent child or family who, in addition to the requirements under § 56 meets the following:

"(a) Does not own tangible and intangible property having a market value in excess of $1,500.00 for a single individual, or if a family group, the tangible and intangible property of the family group does not exceed $2,000.00. The following is excluded in making the determination of the value of tangible or intangible property: (i) the value of a homestead occupied by the applicant or recipient as a home; (ii) $1,000.00 of the cash surrender value of life insurance, however, if the health of the insured is such as to make continuance of the insurance desirable, the entire cash surrender value of life insurance shall be excluded from consideration up to the maximums provided or allowed by federal regulations and in accordance with the rules of the state department; (iii) household goods and wearing apparel; (iv) property used in earning income, including farm stock or implements, horses, cattle, poultry, power machinery and motor powered vehicles or tools, equipment, or an automobile necessary for attaining or retaining remunerative employment and having a fair market value of less than $750.00. * * *

"(c) Has not made an assignment or transfer of any real or personal property within 1 year immediately preceding the date of application, or has not made an assignment or transfer after the granting of assistance, for the purpose of qualifying for assistance or for the purpose of increasing the amount of assistance to be received under this act." MCL 400.56g; MSA 16.456(7).

On July 1, 1976, the Department of Social Services notified petitioner that her AFDC assistance would be canceled because her family had acquired property worth more than $2,000, contrary to § 56g(1)(a), and because petitioner was attempting to divest herself of property in order to remain eligible for benefits, contrary to § 56g(1)(c). The cancellation occurred after the department learned that on June 1, 1976, petitioner's husband had

received $16,200 from a workers' compensation settlement. An anonymous telephone caller revealed the settlement to the department on June 8, 1976, and petitioner was immediately contacted. She acknowledged receipt of the money and claimed that she did not report it because her prior caseworker knew that her husband was going to receive the settlement. By June 8, $10,051.71 of the settlement money had been spent, including $3,341.80 for the purchase of a used car and $2,000 for the down payment on a house.

Petitioner discussed her eligibility for continued receipt of AFDC benefits with Department of Social Services employees on several occasions during June, 1976. Meanwhile, the family continued to spend money and on June 22, petitioner appeared at the department office with a bank statement showing a remaining balance of only $2,116.12. She was told that the bank balance and the car they had purchased disqualified her for benefits because of the $2,000 limit in § 56g(1)(a). Petitioner requested a hearing after receiving the July 1 notification that benefits would be terminated. The hearing was conducted before an administrative law judge, who ruled that the department correctly found that petitioner's family possessed nonexempt property in excess of the $2,000 limitation of § 56g(1)(a). The judge also concluded that petitioner improperly divested $2,340 in order to remain eligible for benefits. Petitioner appealed to the circuit court, which affirmed the administrative law judge, and the present appeal was taken.

Petitioner argues that the evidence did not support the administrative law judge's decision that she transferred property for the purpose of qualifying for assistance. The applicable review standard

requires determination of whether the decision is supported by competent, material and substantial evidence on the whole record. "Substantial evidence" consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance of the evidence. *Soto v Director of Michigan Dep't of Social Services,* 73 Mich App 263; 251 NW2d 292 (1973).

The administrative law judge reached the following conclusions regarding divestment:

"Much more suspect are the June 5 payment of $700 for bills to relatives, a payment of $100 to claimant's husband's mother for an unsubstantiated debt which, even if the loan had been made, is no longer enforceable, and a $584 loan to claimant's brother-in-law. No credible proof for the foregoing was offered; something more substantial than claimant's testimony and a vague, unsigned receipt is required. It hardly seems appropriate for a person who has been receiving public assistance and who expects to need public assistance in the future to be making personal loans. Also open to question is the July 2, check for $1,126 which is primarily for a vacation but also for payment on the house and utilities. Reducing that check by the $170 attributable to their home expenses leaves $956 for vacation expenses which appear to be excessive and are otherwise unaccounted for.

"It is concluded that claimant divested $2,340 ($700 + 100 + 584 + 956). Divestment is an inevitable conclusion from claimant's circumstances of receipt of a large sum of money and rapid expenditure thereof without adequate proof of a purpose other than to continue receiving ADC."

Other evidence bearing on divestment included a caseworker's testimony that petitioner inquired on June 8 whether she could remain eligible for benefits if she sold the car and later, on June 29,

asked "how much she would have to get rid of" to qualify for continued assistance.

Petitioner contends that there was no evidence of an improper purpose or intent for the various expenditures. Intent is a state of mind which often must be determined based upon indirect evidence. We are convinced, after reviewing the entire record, that the administrative law judge's findings on the divestment question were supported by substantial evidence and should not be disturbed by this Court.

Next, petitioner claims that the transfer-of-assets statute (§ 56g[1][c] of the Social Welfare Act), as applied in the present case, violates the federal Social Security Act, 42 USC 601 *et seq.* She contends that the state provision is inconsistent with the Social Security Act because it creates an additional eligibility requirement not specified in that act and bases eligibility for benefits upon income and resources not available to the recipient for current use.

The AFDC program was established by the Social Security Act and has been described as based on a scheme of "cooperative federalism". It is financed largely by the federal government, on a matching fund basis, and is administered by the states. States desiring to participate in the program and to obtain federal funds are required to submit an AFDC plan for the approval of the Secretary of the Department of Health and Human Services (formerly the Department of Health, Education and Welfare) and the plan must conform with the requirements of the Social Security Act and regulations promulgated thereunder. *King v Smith,* 392 US 309, 316-317; 88 S Ct 2128; 20 L Ed 2d 1118 (1968).

Petitioner relies on several provisions of the

Social Security Act, including 42 USC 606(a), which defines a dependent child as a needy child deprived of parental support for one of several listed reasons and living with one of a number of specified relatives at that person's home, who is under age 18, or under age 21 and still a student under certain circumstances. 42 USC 602(a)(7) requires a state AFDC plan to "* * * provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children * * *". The regulation which implements this section requires in pertinent part that state plans must: "* * * provide that * * * (D) Net income available for current use and currently available resources shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such a sum available for support and maintenance". 45 CFR 233.20(a)(3)(ii). Finally, 42 USC 602(a)(10) requires the state plan to provide that AFDC benefits be furnished with reasonable promptness "to all eligible individuals".

In her two-pronged attack on the Michigan transfer-of-assets provision, petitioner characterizes the state provision as an additional eligibility requirement for AFDC and argues that federal law precludes consideration by the state of the money from the workers' compensation settlement which had been spent and was no longer currently available. The United States Supreme Court has consistently held that state eligibility standards which exclude persons eligible for AFDC under the federal standards violate the Social Security Act and are invalid under the supremacy clause. For exam-

ple, in *King v Smith, supra,* the Court struck down an Alabama "substitute father" regulation which denied AFDC benefits to children of a mother who cohabited with a man not her husband. In *Townsend v Swank,* 404 US 282; 92 S Ct 502; 30 L Ed 2d 448 (1971), the Court ruled invalid an Illinois regulation denying AFDC benefits to certain college students under age 21 on the grounds that it was inconsistent with language in 42 USC 606(a)(2)(B) defining dependent children to include some college students. Similarly, in *Carleson v Remillard,* 406 US 598; 92 S Ct 1932; 32 L Ed 2d 351 (1972), a California regulation denying eligibility for AFDC where a parent was absent due to military service was overturned because under federal law a dependent child could be one deprived of parental support due to the continued absence from home of a parent. The Supreme Court summed up its position in *Quern v Mandley,* 436 US 725, 740; 98 S Ct 2068; 56 L Ed 2d 658 (1978), stating:

"* * * [T]he States are not free to narrow the federal standards that define the categories of people eligible for aid. Beginning with *King v Smith, supra,* this Court has consistently held that States participating in the AFDC program must make assistance available to *all* persons who meet the criteria of § 406(a) of the Act. The statutory foundation for this conclusion is § 402(a)(10), which requires that a State's 'plan for aid and services to needy families with children' must provide that 'aid to families with dependent children shall be furnished with reasonable promptness to all eligible individuals.'" (Citations omitted.)

The states are not devoid of all power in the AFDC sphere; they are given considerable latitude in allocating their AFDC resources. Each state is free to set its own monetary standard of need and

to determine the level of benefits by the amount of funds it devotes to the program. *King, supra,* 392 US 318-319, *Evans v Dep't of Social Services,* 22 Mich App 633, 637; 178 NW2d 173 (1970). Furthermore, a federal regulation mandates that states include anti-fraud provisions in their AFDC plans. 45 CFR 233.110 requires a state plan to provide for means of identifying fraud and reporting it to law enforcement officials. The Michigan transfer-of-assets provision is within each of these areas of state concern since it constitutes a device for controlling the allocation of funds and denies benefits only to persons who have transferred assets in order to remain eligible for benefits, which constitutes a form of fraud.

Despite the fact that the transfer-of-assets provision can be viewed as an additional eligibility requirement contrary to the quoted passage from *Quern, supra,* because of its relationship to the state concerns mentioned above, we decline to rule that it is invalid under the federal supremacy doctrine. It is noteworthy that the Social Security Act does not expressly prohibit state transfer-of-assets laws and we are guided by the following principle:

"If Congress is authorized to act in a field, it should manifest its intention clearly. It will not be presumed that a federal statute was intended to supersede the exercise of the power of the state unless there is a clear manifestation of intention to do so. The exercise of federal supremacy is not lightly to be presumed." *New York State Dep't of Social Services v Dublino,* 413 US 405, 413; 93 S Ct 2507; 37 L Ed 2d 688 (1973).

Invalidation of the transfer-of-assets law could impair the state's capacity to deal with the problem of mounting welfare costs and an increasing financial dependency of many citizens. We are

reluctant to interfere with the state's attempt to insure that limited welfare funds be spent on behalf of those genuinely incapacitated and most in need. A finding of conflict between the state and federal statutes would allow abuse of the AFDC program, because without the transfer-of-assets provision, persons could become eligible for benefits simply by giving away or signing over control of their assets. We do not believe such a result was contemplated by the Legislature or the Department of Health and Human Services. See, *Lerner v Dep't of Health & Social Services,* 70 Wis 2d 670; 235 NW2d 478 (1973).

The cases cited by petitioner are not controlling; in fact, both *Owens v Roberts,* 377 F Supp 45 (MD Fla, 1974), and *Udina v Walsh,* 440 F Supp 1151 (ED Mo, 1977), contain language suggesting that transfer-of-assets provisions similar to the one involved in the present case are permissible. In *Owens,* the statute ruled invalid created a rebuttable presumption that transfers of assets made within two years prior to or during the receipt of assistance were for the purpose of qualifying for benefits. No such presumption is created by the Michigan statute. A California transfer-of-assets rule and corresponding regulations alleged to conflict with the federal Medicaid statutes and regulations were upheld in *Dawson v Myers,* 622 F2d 1304 (CA 9, 1980), despite language in the regulations creating a rebuttable presumption of an improper purpose.

We reject petitioner's suggestion that her conduct amounted to mere imprudence, since it was determined below that certain expenditures were made for the purpose of remaining eligible for assistance. The decision of the circuit court upholding the denial of benefits is affirmed.

Affirmed. No costs, a public question.