KILPATRICK v DEPARTMENT OF SOCIAL SERVICES

Docket No. 67748. Submitted May 5, 1983, at Lansing.—Decided June 21, 1983.

Joycelyn Kilpatrick was denied Aid to Families With Dependent Children benefits by the Department of Social Services for the months of February and March, 1981, because of excess resources. A hearing officer affirmed the denial of benefits, whereupon Kilpatrick appealed to the Alpena Circuit Court, which also affirmed, Robert R. Ferguson, J. Kilpatrick appeals. *Held:*

1. Kilpatrick's application for AFDC benefits was denied because she exceeded the $2,000 asset ceiling for eligibility during February and March, 1981. The hearing officer and the circuit court were correct in rejecting Kilpatrick's argument that the family sawmill, because of its alleged unmarketability, should not have been treated as a nonexempt asset for purposes of determining her family's eligibility for AFDC benefits. The alleged "unmarketability" of the sawmill was Kilpatrick's reluctance to accept less than what she considered was a fair price for the sawmill. There was no legal impediment to the sale of the sawmill in February or March, 1981, at a fair market value which took into consideration the depressed market situation. The property was available to her for purposes of AFDC eligibility and increased the value of her assets over the $2,000 ceiling.

2. Kilpatrick's argument that the Department of Social Services placed an unrealistically high value on her equity in the sawmill was not raised in the circuit court and will not be considered on appeal. No miscarriage of justice will occur by

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 79 Am Jur 2d, Welfare Laws §§ 15, 57.
[2, 4] 79 Am Jur 2d, Welfare Laws §§ 19, 57.
  Income tax refund as income or resource to be considered in determining eligibility for benefits under aid to families with dependent children program. 3 ALR4th 1074.
  Personal injury recovery as affecting eligibility for, or duty to reimburse, public welfare assistance. 80 ALR3d 772.
[5] 5 Am Jur 2d, Appeal and Error § 545 *et seq.*

the Court of Appeals failure to address the merits of Kilpatrick's argument.

Affirmed.

1. SOCIAL SECURITY — AID TO FAMILIES WITH DEPENDENT CHILDREN.

A family in Michigan is eligible for Aid to Families With Dependent Children benefits if, *inter alia,* the family group does not have property worth more than $2,000; only income and resources which are available in fact for current use are to be considered in determining the need of individuals for assistance and the amount of payments to or for them, and the value of the family's home, $1,000 of the cash surrender value of life insurance, household goods and wearing apparel and some property used in earning income may not be counted toward the $2,000 limitation (MCL 400.56g[1][a]; MSA 16.456[7][1][a]; 1979 AC, R 400.12[10]).

2. SOCIAL SECURITY — AID TO FAMILIES WITH DEPENDENT CHILDREN — NONHOMESTEAD REAL PROPERTY.

The value of nonhomestead real property is not exempt from consideration in determining an applicant's eligibility for Aid to Families With Dependent Children benefits.

3. SOCIAL SECURITY — AID TO FAMILIES WITH DEPENDENT CHILDREN.

State Aid to Families With Dependent Children eligibility standards cannot exclude persons who satisfy federal standards of eligibility.

4. SOCIAL SECURITY — AID TO FAMILIES WITH DEPENDENT CHILDREN — HOME PROPERTY — EQUITY.

Equity in home property is currently available to an applicant for Aid to Families With Dependent Children benefits when there is no legal impediment to the immediate sale of the equity in the open market.

5. APPEAL — PRESERVING QUESTION.

The Court of Appeals will not review issues that were not raised and decided by the trial court except where a miscarriage of justice would result from a failure to pass upon them.

*Lawrence P. Hanson,* for plaintiff.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Janis Meija* and *Rose A. Houk,* Assistants Attorney General, for defendant.

Before: ALLEN, P.J., and R. B. BURNS and D. F. WALSH, JJ.

D. F. WALSH, J. Plaintiff, Joycelyn Kilpatrick, was denied Aid to Families With Dependent Children (AFDC) benefits by defendant Michigan Department of Social Services (DSS) for the months of February and March, 1981, because of excess resources. She requested a hearing before a hearing officer. The hearing officer affirmed the denial of benefits. Plaintiff appealed the hearing officer's decision to circuit court, which affirmed. She now brings her appeal to this Court.

Plaintiff applied for AFDC benefits in December, 1980, but withdrew her application because her family was able to earn sufficient income through sawmill contracts which lasted until January, 1981. She again applied for benefits in February, 1981. In her application, she listed assets whose value totalled $29,390.42, including nonhomestead real property (the aforementioned sawmill) with an equity value of $29,072.87.

The Kilpatricks purchased the sawmill on land contract and operated it as a family business from 1975 to 1979. In October, 1979, they leased the sawmill to a third party for one year with an option to purchase. The lessee did not exercise the option. In November, 1980, the entire sawmill business, including land and equipment, was listed with a realtor at a selling price of $39,800. In a letter to DSS, the realtor stated that he had received numerous inquiries about the sawmill but that the economy would have to change drastically before the sawmill would be sold. In a subsequent letter to DSS, the realtor stated that a "quick sale" price of the sawmill would be $25,000. In February, 1981, the Kilpatricks still owed $10,728.13 on the sawmill land contract.

Plaintiff's application for AFDC benefits was denied because she exceeded the $2,000 asset ceiling for eligibility during February and March, 1981. MCL 400.56g(1)(a); MSA 16.456(7)(1)(a).[1] The hearing officer and circuit court rejected plaintiff's claim that the sawmill, because of its alleged unmarketability, should not have been treated as a nonexempt asset for purposes of determining her family's eligibility for AFDC benefits. We affirm.

The AFDC program was established by Congress as part of the Social Security Act. 42 USC 601 *et seq.* It is financed largely by the federal government, which provides matching funds to those states which elect to participate. Administration of the program is left to the states, whose plans must be approved by the Secretary of the Department of Health and Human Services and must meet certain minimum standards set forth in the Social Security Act and regulations promulgated thereunder. *King v Smith,* 392 US 309; 88 S Ct 2128; 20 L Ed 2d 1118 (1968); *Pease v Director, Dep't of Social Services,* 105 Mich App 689, 695; 308 NW2d 432 (1981), *lv den* 412 Mich 940 (1982).

42 USC 602(a)(7) dictates that state AFDC plans provide that, in determining need, the state agency charged with administering the program shall take into consideration income and resources of any child or relative claiming aid. At 45 CFR 233.20(a), the requirements for state AFDC plans are more fully detailed. Pursuant to 45 CFR 233.20(a)(3)(ii), state plans must:

"Provide that in determining need and the amount of the assistance payment * * *.

---

[1] Plaintiff and her husband declared bankruptcy in April, 1981. They were declared eligible for AFDC benefits as of April 1, 1981, since the sawmill, an asset of the bankruptcy estate, was no longer available to them.

Only AFDC eligibility for February and March, 1981, is at issue in this case. Plaintiff received food stamps in each of those months.

\* \* \*

"(D) Net income \* \* \* and resources available for current use shall be considered; income and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance \* \* \*.

"(E) Income and resources will be reasonably evaluated. Resources will be evaluated according to their equity value.

\* \* \* .

"Equity value means fair market value minus encumbrances (legal debts); Fair market value means the price an item of a particular make, model, size, material or condition will sell for on the open market in the geographic area involved \* \* \*. Liquid assets are those properties in the form of cash or other financial instruments which are convertible to cash \* \* \*." See 45 Fed Reg 45911-45912 (1980).

Michigan is a participant in the AFDC program and has developed a state plan for the program's administration. MCL 400.1 *et seq.;* MSA 16.401 *et seq.* According to that plan, a family is eligible if, *inter alia,* the family group does not have property that has a value of more than $2,000. This limitation excludes the value of their home, $1,000 of the cash surrender value of life insurance, household goods and wearing apparel, and some property used in earning income. MCL 400.56g(1)(a); MSA 16.456(7)(1)(a).

The director of the state department of social services is authorized to promulgate rules with respect to the AFDC program. MCL 400.10; MSA 16.410. Pursuant to that authorization, the director has promulgated the following rule:

"Only income and resources which are available in

fact for current use are to be considered in determining the need of individuals for assistance and the amount of payments to or for them." 1979 AC, R 400.12(10).

The DSS assistance payments manual sets forth departmental policy in the administration of the AFDC program. The manual describes nonhomestead real property, which is not exempt, and sets forth DSS policy concerning the determination of the value and availability of such property.

"Non-homestead real property is real estate a person owns that is not part of his homestead. This includes non-homestead life estates and life leases.

"The value and availability of real property depends upon its equity value and type of ownership.

"Equity value is the property's fair market value minus all encumbrances and the costs to be incurred in the sale of the property.

"Joint Ownership. If a person owns non-homestead property jointly with his spouse, and they live together, the total equity value is a countable asset for that person.

"The person's share of non-homestead property held jointly with a non-spouse or a separated spouse, is calculated by dividing the value by the number of owners, unless otherwise specified in the document of ownership. If the client verifies that the other owners do not agree to the sale of the share, it is not available and none of it is counted toward the asset limit." DSS Assistance Payments Manual, Item 211 (subject: Assets) pp 4-5.

It is plaintiff's position that this policy creates a presumption, inconsistent with federal and state regulation, that, with the exception of joint ownership with a nonspouse or a separated spouse, mere ownership of a nonhomestead real property makes that property available to the owner for AFDC purposes. She claims that it is impermissible to

presume "that a nonsalable or nonmarketable resource is available to meet the needs of an indigent family". She argues that the value of the sawmill should have been disregarded for purposes of determining her family's AFDC eligibility since the sawmill was not "actually available" or "available in fact for current use".

The United States Supreme Court has repeatedly held that state AFDC eligibility standards cannot exclude persons who satisfy federal standards of eligibility. See *Pease v Director, Dep't of Social Services, supra,* pp 696-697, and cases cited therein. Courts examining state plans "have routinely invalidated presumptions which assume the availability of resources or income that do not in fact exist". *Jamroz v Blum,* 509 F Supp 953, 959 (ND NY, 1981), and cases cited therein. The seminal case is *King v Smith, supra,* where the Supreme Court struck down a state regulation which was inconsistent with the federal statute in denying AFDC benefits to children of a mother who cohabited with a man who was not her husband. See also *Lewis v Martin,* 397 US 552; 90 S Ct 1282; 25 L Ed 2d 561 (1970).

In *Hinderer v Dep't of Social Services,* 95 Mich App 716; 291 NW2d 672 (1980), *lv den* 409 Mich 930 (1980), this Court rejected the plaintiff's challenge to the lag budgeting system used by DSS in making reductions from AFDC benefits. Under that system, income received by an AFDC recipient during one month is reported to DSS during the next month and is reflected in a reduced AFDC benefit in the following month. The Court adopted a First Circuit Court of Appeals panel's ruling that, "A resource is available when the sum received actually reduces expenses for which the recipient would otherwise be liable." 95 Mich App

723, citing *Randall v Goldmark,* 495 F2d 356, 361 (CA 1, 1974). At issue in *Hinderer,* however, was income; the Court was not dealing with the valuation of nonliquid assets. The Court's definition of resource, which includes the actual reduction of expenses, does not apply in the context of determining the value of real property.

Defendant cites *Kanda v Chang,* 475 F Supp 368 (D Hawaii, 1979), where the court discussed the validity of policies contained in Hawaii's public welfare manual governing the evaluation of equity in home property owned by AFDC applicants. The home property was exempt if its equity value did not exceed $40,000. Assessing Hawaii's evaluation policy in light of 45 CFR 233.20(a)(3)(ii)(D), *supra,* the court observed that, by definition, real property is never a "liquidated sum", and ruled that "equity in home property is currently available when there is no legal impediment to the immediate sale of the equity in the open market". 475 F Supp 381 and fn 42. The court rejected the suggestion that the delay between listing for sale and actual sale should be a factor in determining current availability:

"Firstly, by the very nature of the asset, real property would never be currently available if that meant being equivalent to cash in hand. Secondly, a depressed market situation would be reflected in fair market value." 475 F Supp 381.

We are persuaded that the *Kanda* court's discussion applies with equal force to the instant controversy. Pursuant to DSS policy, the determination of an AFDC applicant's equity value in nonhome realty begins with an assessment of the property's fair market value. This is required by and complies fully with the federal regulation. A realtor's

statement of the property's fair market value is adequate proof of that value. (Assistance Payments Manual, Item 211, p 8.) It must be assumed that the realtor's assignment of fair market value to plaintiff's sawmill took into consideration the depressed market situation. There was no legal impediment to the sale of the sawmill in February and March, 1981. In contrast to *King v Smith, supra,* and its progeny, the problem in this case is not the presumption of the availability of resources owned by someone other than the AFDC applicant, but rather the determination of when an AFDC applicant's own resources are available to him or her and the evaluation of those resources for AFDC purposes.

Plaintiff does not suggest a workable alternative to Michigan's present system. We are persuaded that that system provides sufficient flexibility in the determination of asset availability and value. We find no conflict between DSS policies and state and federal requirements of actual availability of resources for current use. While plaintiff and her family may, in a very real sense, have been "needy" in February, 1981, and March, 1981, the present system is not designed to respond to persons in their situation, who may be forced to sell property at "fair market values" which are, temporarily, significantly low due to economic recession and depression. Absent conflict with federal requirements, the state is free "to insure that limited welfare funds be spent on behalf of those genuinely incapacitated and most in need". *Pease v DSS, supra,* p 699. State response to persons who, like plaintiff, are among the growing ranks of the "new poor", and who are denied AFDC benefits solely because of their ownership of resources obtained in better economic times, must be a

legislative response. Given the present system, judicial response is precluded.

Plaintiff argues, alternatively, that DSS placed an unrealistically high value on her equity in the sawmill.

The hearing officer agreed with the DSS calculation of equity value. On appeal to the circuit court, plaintiff made no challenge to the hearing officer's method of determining her equity value in the property. She argued only that the property was not "available" to her for purposes of AFDC eligibility.

Plaintiff's failure to raise this issue in circuit court constituted a waiver of the issue; this Court will not decide issues not raised and decided by the circuit court. *American Way Service Corp v Ins Comm'r,* 113 Mich App 423, 427-428; 317 NW2d 870 (1982). We find that no miscarriage of justice will occur by our failure to address the merits of this issue.

We hold that the sawmill was available to plaintiff in February and March, 1981. The determination that she was ineligible for AFDC benefits because of excess resources is affirmed.