**Germaine ROY**

v.

**COMMISSIONER, DEPARTMENT OF HUMAN SERVICES.**

Supreme Judicial Court of Maine.

Argued Jan. 15, 1985.

Decided March 6, 1985.

Jack Comart, Pine Tree Legal Assistance (orally), Augusta, for plaintiff.

Katherine Greason, Asst. Atty. Gen. (orally), Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ.

WATHEN, Justice.

Plaintiff, Germaine Roy, was terminated from eligibility to receive Aid to Families with Dependent Children (AFDC) benefits by defendant Department of Human Services (DHS) because of excess resources. She requested a hearing before a hearing officer, who affirmed the termination of benefits. The Superior Court (Kennebec County) affirmed that decision. Now, on appeal to this Court, plaintiff argues that DHS erred in determining that her one-half interest in a Louisiana house was an available resource for purposes of determining continuing eligibility for AFDC benefits. We find no error, and deny the appeal.

Plaintiff Roy had been receiving AFDC benefits since December 1979. Plaintiff had always reported to DHS that her assets included a house in Louisiana that she owned jointly with her husband. In June or November of 1982, the plaintiff and her husband were divorced; plaintiff reported that divorce to DHS in December 1982. Although plaintiff and her husband had not reached an agreement about a property settlement at the time of the divorce, the divorce decree provided that the house was to be sold and the proceeds divided. After several months of negotiations, plaintiff and her ex-husband reached an agreement to sell the house and listed it with a Louisiana realtor.

In October 1983, the Department determined that the Louisiana home was an asset available to the plaintiff and that its value exceeded the asset limit in the Maine AFDC program, which is $1,000.00. DHS made this determination from the following evidence: 1) a letter from the Louisiana realtor stating that "top dollar" for the property, would be approximately $32,-800.00; 2) information from the plaintiff's

representative that outstanding debts connected with the property amount to between $8,000.00 and $12,000.00. Plaintiff Roy testified that her ex-husband quoted the agent as saying she would receive approximately $7,000.00. Because plaintiff's possible $7,000.00 share exceeded the $1,000.00 program limit, DHS notified the plaintiff that her AFDC benefits would end in December of 1983. Following an administrative hearing to review that action, a hearing officer for DHS determined that the Department had acted correctly. The Superior Court denied plaintiff's appeal from that decision; plaintiff now appeals to this Court.

The AFDC program was established by Congress as part of the Social Security Act. 42 U.S.C. §§ 601–615 (1983). The federal government finances a large portion of the program, and provides matching funds to those states that elect to participate. The states' role is to administer the program; however, their plans must be approved by the Secretary of the Department of Health and Human Services and must meet certain minimum standards set forth in the Social Security Act and regulations promulgated thereunder. *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

42 U.S.C. § 602(a)(7) mandates that state AFDC plans provide that, in determining need, the state agency charged with administering the program shall take into consideration income and resources of any child or relative claiming aid. More fully detailed requirements for state AFDC plans are set forth at 45 C.F.R. 233.20(a). 45 C.F.R. 233.20(a)(3)(ii) provides that state plans must:

> "Provide that in determining need and the amount of the assistance payment....
>
> ....
>
> "(D) Income ... and resources available for current use shall be considered.... [I]ncome and resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has

the legal ability to make such sum available for support and maintenance.

> "(E) Income and resources will be reasonably evaluated. Resources will be evaluated according to their equity value.
>
> ....

Maine has elected to participate in the AFDC program. *See* 22 M.R.S.A. §§ 3741–3758 (1980 & Supp.1984–1985). The statute authorizes the Department of Human Services to administer and operate the AFDC program. 22 M.R.S.A. § 3741. Pursuant to that authority, DHS has promulgated the Maine Public Assistance Payment Manual (MPAPM) in conformity with Maine's Administrative Procedure Act, 5 M.R.S.A. §§ 8001–11115 (1979 & Supp.1984–1985).

The MPAPM provision applicable to this case provided in part:

> Available resources are to be utilized in determining eligibility. Resources are considered available both when actually available and when the applicant or recipient has a legal interest in a liquidated sum and has the legal ability to make such sum available for support and maintenance.
>
> Potential resources are resources which could be available if action were taken to obtain them. Such resources are not considered in determining initial eligibility. As a condition of continuing eligibility the recipient must promptly take whatever reasonable steps are necessary to obtain the resources.
>
> Unavailable resources are not to be considered in determining eligibility. This includes real or personal property whose value is legally unobtainable by the client. Some examples are:
>
> \*   \*   \*   \*   \*   \*
>
> 4. Property which is owned jointly by the client if the terms of ownership prohibit sale of the client's portion, or if the other owner(s) refuse to agree to the sale.
>
> \*   \*   \*   \*   \*   \*

Assets are defined as equity in real and/or personal property which is owned in full or in part by an individual.

*Equity* is defined as the sale or redemption fair market value minus any encumbrances against the property (legal debts) and/or minus that portion that might be owned by others.

*Ownership* is determined by power, authority, etc. to sell, exchange, convert or redeem the property in question.

*Fair Market Value* is defined as the price an item of a particular make, model, size, style, material or condition will sell for on the open market in the geographic area involved.

On this appeal, plaintiff does not argue that her equity value in the Louisiana house is an unavailable resource under Department and federal regulations. Instead, her arguments center around the applicability of the DHS term "potential resource." Plaintiff argues that a common sense application of the potential resource provision, consistent with the policy and purposes of the AFDC program, is that equity value in a non-residential home is a potential resource that could, if obtained, supplant current need for AFDC benefits. Significantly, plaintiff asks us to look at factors reflecting her practical, as opposed to theoretical, ability to sell, such as the Louisiana realtor's opinion that the house would be difficult to sell. DHS, based on the language of its regulation defining unavailable resources, contends that plaintiff's equity share remained an unavailable resource until plaintiff and her husband, after their 1982 divorce and months of negotiations, agreed to sell the house; once the agreement of sale was reached, the plaintiff's equity value became an actually available resource. DHS further argues that the import of plaintiff's "marketabililty" argument is that real property can never be an available resource.

Decisions from courts that have considered the use of non-homestead real property or equity in home property as an avail-

able asset for AFDC resource determination are not in accord. Two courts have struck down state agency determinations that non-homestead real property was "available" for consideration as an AFDC asset by focusing on the plaintiff's practical ability to sell. *Miller v. Stumbo,* 661 S.W.2d 1 (Ky.App.1983); *Parson v. Miller,* 90 Nev. 126, 520 P.2d 607 (1974). In *Stumbo,* the property, of which the petitioner owned one-third, had been difficult to sell because it needed numerous repairs. 661 S.W.2d at 1. In *Parson,* the petitioner owned the property as a tenant in common with her ex-husband's second wife (now widowed), and the property was deemed unmarketable because of the widow's dower rights. 520 P.2d at 609. The court noted, however, that even if the legal problems were cleared up, the "practical problems of a widow, an ex-wife, and the guardians of the minor children agreeing upon an asking price for the property and procuring a ready, willing and able buyer, are of considerable magnitude." *Id.*

Other courts have upheld state agency decisions to include real property in AFDC resource determinations. *Kanda v. Chang,* 475 F.Supp. 368 (D.Hawaii 1979); *Kilpatrick v. Michigan Dept. of Social Services,* 126 Mich.App. 559, 337 N.W.2d 576 (1983). In *Kanda,* the United States District Court for Hawaii ruled that equity in home property is currently available when there is no legal impediment to its sale in the open market. 475 F.Supp. at 381. As plaintiff notes, however, Hawaii had a detailed statute dealing with real property as a potentially available resource for AFDC purposes. The applicable statute provided:

Real property tied up by legal conditions or unclear title is not considered a resource until it [sic] has been removed. The applicant or recipient shall be given 30 days following date of application to initiate legal action by contacting an attorney to clear title and may be given up to one year from date of application to remove the condition or clear the title.

H.P.W.M. § 3392(2)(a), quoted at 475 F.Supp. at 374.

Plaintiff urges that because Maine does not have a similar statute, we should not consider adopting the legal impediment test. However, we, as did the Court of Appeals of Michigan in *Kilpatrick v. Michigan Department of Social Services*, 126 Mich.App. 559, 337 N.W.2d 576 (1983), do not find the absence of such a statute to be dispositive. The court in *Kilpatrick* adopted the *Kanda* "legal impediment" test although Michigan apparently did not have a statute similar to the applicable Hawaii statute. The court quoted the *Kanda* court's rejection of the argument that delay between listing for sale and actual sale should be a factor in determining whether an asset is "currently available."

> Firstly, by the very nature of the asset, real property would never be currently available if that meant being equivalent to cash in hand. Secondly, a depressed market situation would be reflected in fair market value.

*Kanda*, 475 F.Supp. at 381.

> The *Kilpatrick* court went on to state: Plaintiff does not suggest a workable alternative to Michigan's present system. We are persuaded that that system provides sufficient flexibility in the determination of asset availability and value. We find no conflict between DSS policies and state and federal requirements of actual availability of resources for current use. While plaintiff and her family may, in a very real sense, have been "needy" in February, 1981, and March, 1981, the present system is not designed to respond to persons in their situation, who may be forced to sell property at "fair market values" which are, temporarily, significantly low due to economic recession and depression. Absent conflict with federal requirements, the state is free "to insure that limited welfare funds be spent on behalf of those genuinely incapacitated and most in need." *Pease v. DSS, supra*, 105 Mich.App. p.

699, 308 N.W.2d 432. State response to persons who, like plaintiff, are among the growing ranks of the "new poor", and who are denied AFDC benefits solely because of their ownership of resources obtained in better economic times, must be a legislative response. Given the present system, judicial response is precluded.

*Kilpatrick*, 337 N.W.2d at 580.

Indeed, the *Kanda* "legal impediment" test comports not only with the Department's interpretation of its own regulations, but also with the federal government's interpretation of its corresponding regulations. In the Deficit Reduction Act of 1984,[1] Congress authorized the Secretary of Health and Human Services to promulgate regulations addressing situations such as plaintiff's. Pursuant to that authority, the Secretary of Health and Human Services promulgated the following regulation:

> The amount of real and personal property that can be reserved for each assistance plan shall not be in excess of one thousand dollars equity value (or such lesser amount as the State specifies in its state plan) excluding only:
>
> Real property for a period of six months (or at the option of the State, nine months) which the family is making a good faith effort (as defined in the State plan) to sell subject to following provisions. The family must sign an agreement to dispose of the property and to repay the amount of aid received during such period that would not have been paid had the property been sold at the beginning of such period, but not to exceed the amount of the net proceeds of the sale. If the property has not been sold within the specified time period, or if eligibility stops for any other reason, the entire amount of aid paid during such period will be treated as an overpayment;
> . . . .

1. P.L. 98–369, § 2626.

49 Fed.Reg. 35,599 (1984) (to be codified at 45 C.F.R. § 233.20.[2]

 Although this regulation is not applicable to the instant case, we find that it strongly supports DHS' argument that once the final legal impediment to the sale of plaintiff's real property was removed, her equity share became "actually available" for inclusion as an AFDC asset. The agency's interpretation of its own regulations is entitled to considerable deference on judicial review. *Trull Nursing Home v. State of Maine Department of Human Services*, 461 A.2d 490, 496 (Me.1983). Moreover, we find the legal impediment test discussed by the courts in *Kanda* and *Kilpatrick* to be the better reasoned view. We therefore hold that at least at the point that plaintiff and her husband reached an agreement to sell their Louisiana house, any legal impediment to its sale was removed, and plaintiff's equity in the house became "actually available" within the meaning of the applicable Maine and federal regulations. The Superior Court, therefore, did not err in affirming DHS' denial of AFDC benefits.

Plaintiff also argues, based on a number of AFDC cases beginning with *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968), that the plaintiff's equity in the Louisiana house is not an available resource because DHS has illegally presumed availability where there is none. We do not agree. In contrast to *King* and the cases which plaintiff cites for this proposition, this case does not concern the presumption of availability of resources owned by an individual other than the AFDC applicant, but rather the determination of when an AFDC applicant's own resources are available to her, and the evaluation of those resources for AFDC eligibility.

The entry is:

2. In compliance with this regulation, DHS has enacted regulations for determining the eligibility of non-homestead real property. See Maine Public Assistance Payments Manual, Chapter II,

Appeal denied.

Judgment affirmed.

All concurring.

Section B, Page 5. This provision did not become effective until after plaintiff had been denied benefits.